## Case No. 3,393.

In re CRITTENDEN. UNITED STATES v. LANDRUM. SAME v. JOHNSON. SAME v. GRIMES. SAME v. BRISTOW. SAME v. HOWARD. SAME v. GALLAGHER. SAME v. PARKS. SAME v. FAULBREE. SAME v. YOUNG. SAME v. ROBERTS. SAME v. SALLY. SAME v. TOLBEE.

[2 Flip. 212.][1]

Circuit Court, D. Kentucky. July 10, 1878.

MARSHAL'S FEES — CONSTRUCTION OF REVISED STATUTE, SECTION 829 — DEFINITION OF WORD "RETURN"—COMMISSIONER'S POWER—MARSHAL —BAILIFF — FEES OF MARSHAL FOR ATTENDING EXAMINATIONS, BRINGING IN, ETC. — ACTUAL TRAVELING EXPENSES—COSTS OF TRANSPORTING GUARDS—COSTS OF TRANSPORTATION OF GUARDS ALLOWED, EVEN WHEN WITNESSES — WRONG PERSON ARRESTED — WRONG DESCRIPTION OF PERSON'S CHRISTIAN NAME — ARREST IN THE WRONG STATE—CHARGE FOR TIME EMPLOYED IN ENDEAVORING TO ARREST — NOT TRAVELING BY USUAL ROUTE—THE STATUTES OF 1853 AND 1875 REVIEWED—DUTIES OF MARSHAL.

1. "Travel" or "mileage" is to be computed from the place where the process is returned to the place of service.

2. The very term "return" implies that the process is taken back to the place whence it issued.

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

3. The commissioner has no power to direct the warrant to be returned before another commissioner.

4. The marshal may appoint a bailiff and authorize him to perform a particular act or duty. He then becomes a special deputy.

5. Section 829, Rev. St., allows the marshal, for attending examinations before a commissioner, and bringing in, guarding and returning prisoners charged with crimes, two dollars a day, and for each deputy, not exceeding two, necessarily attending, two dollars a day.

6. When the marshal serves warrants on different parties at same place, he may demand mileage in each case. The only limitation is where there are more than two warrants served in favor of the same parties against the same defendants.

7. The expenses allowed for "traveling" must be actually proven by the marshal, deputy or bailiff who incurred the expenses, and should be referred to specifically.

8. The costs of transporting a guard should be allowed only where it is shown that he is necessary, and, if practicable, the certificate of the commissioner before whom the prisoner was taken, should accompany the affidavit.

9. The marshal should be allowed for transportation of guards, even if such guards be summoned as witnesses and be paid for mileage.

10. Where the wrong person is arrested the marshal can be allowed no fees of any kind.

11. Where the Christian name of the person arrested is wrongly given by the person making the affidavit and accompanying the officer who makes the arrest, transportation fees should, nevertheless, be allowed.

12. Where the marshal, acting in good faith, arrests a person in Tennessee, believing at the time that the place of arrest is within the state of Kentucky, no fees can be allowed for such illegal arrest.

13. Where the deputy marshal demands compensation for eight days' service in, as he alleges, endeavoring to arrest through a special bailiff, and the same is not supported by proof of such last-named officer, it must be refused. The bailiff should also explain in his affidavit when charges are made for more days than are absolutely necessary, why he was so employed, and why the arrest was not made sooner. Only two days are allowed in such cases, in the absence of the regular proof.

14. Where the marshal, in transporting a prisoner, does not travel by the usual route, he should be allowed mileage only for the route usually traveled.

15. Notwithstanding the statutes of 1853 and 1875, section 829, Rev. St., will be adhered to as the rule governing the computation of mileage.

16. As to misconduct of deputies, observed upon.

[Crittenden, marshal of the district of Kentucky, presented his accounts for approval in the several cases hereinbefore specified.] The facts are fully detailed in each case.

BALLARD, District Judge. In the case of U. S. v. Landrum, the warrant was issued at Louisville by a commissioner there, and it came to the hands of the marshal there. It directed the arrest of Landrum and the return of the warrant before another commissioner at London, in this state. It is not disputed that the marshal actually

traveled to execute the warrant, the number of miles charged in this account, and it is not questioned that had the warrant been returned before the commissioner who issued it, the mileage charged would not be excessive; but it is insisted that "travel" or "mileage" is, by the terms of section 829 of the Revised Statutes, to be computed "from the place where the process is returned to the place of service;" that, as the prisoner was arrested near London and taken by command of the warrant before the commissioner in London, the warrant was, in contemplation of law, "returned" to him, and that the marshal can charge for going to serve the warrant for travel of only ten miles, this being the distance from the place where, under this view, the process was "returned" to the place of service. If the provisions of section 7 of the act of February 22, 1875 [18 Stat. 334], apply to this case, it is clear that the charge of the marshal is not excessive. He asks no allowance for travel in going to serve the warrant, which was not actually and necessarily performed. But, as I am strongly inclined to think that the act of 1875 does not alter the mode of computing the mileage of marshals on process executed within the judicial district in which such process is issued, I proceed to consider the question as if it depended entirely on the proper construction of section 829.

I am of the opinion that the commissioner in Louisville had no authority to make the warrant issued by him returnable before the commissioner in London, or before any other commissioner than himself. If it is conceded that he might direct the marshal to take the person before any other commissioner for examination, I suppose the process should be finally returned to himself. Every process which is issued by a court must be returned, unless some special statute otherwise provides, to the court which issues it. This is essential in order, first, that the court may know that its order has been obeyed; and, second, that the records of the court may be complete. The very term "return" implies that the process is taken back to the place whence it is issued. A thing delivered by one person to another is not "returned" when it is delivered to a stranger, and at a place other than the place of original delivery. I am of the opinion, therefore, that, in contemplation of the statutes, every process is to be returned to the court or commissioner which issued it, and that for the purpose of computing the mileage of the marshal, the place of return is the place of issue.

Any other construction would enable commissioners to enlarge or lessen the fees of marshals at pleasure, and thus defeat the policy of the statute. Unquestionably the statute intends, as far as practicable, to furnish fixed rules for ascertaining the fees of marshals. Hence it has declared that his "travel, in going * * * to serve any process

* * * shall be not the actual distance traveled, but the distance from one fixed point to another fixed point; that is, the distance from the place of service to the place whence the process was issued, or, which is the same thing, the place of return. But, if the commissioner can direct the warrant to be returned before another commissioner, he may direct it to be returned before a commissioner most remote from the "place of service," and thus make the marshal's fees for mileage ten or more times as much as they would be if the process were returnable before himself; if, indeed, for the purpose of computing mileage, we are not confined to the distance from the "place of service" to the place whence the process issued—that is, unless we regard the place of issue and place of return of process as one and the same place. I am of the opinion, therefore, that the objection taken by the attorney to the charge of the marshal in the case of Landrum, and in other similar cases, is not well taken.

The second exception raises the question whether the marshal can charge a fee for attending, by a "special bailiff, examinations before a commissioner, and bringing in, guarding and returning prisoners charged with crime," etc. I am of the opinion that he may. I have heretofore decided, in case of Ex parte Roberts [Case No. 15,463], that a marshal may appoint a bailiff, and authorize him to perform a particular act or duty. When the bailiff is appointed and engaged in the performance of the act authorized he is the deputy of the marshal; not the general deputy, it is true, but the special deputy. He is deputied by the marshal to do a particular thing, and is, therefore, in fact, as well as in law, his deputy. Section 829 of the Revised Statutes allows the marshal "for attending examinations before a commissioner, and bringing in, guarding and returning prisoners charged with crime, two dollars a day, and for each deputy, not exceeding two, necessarily attending, two dollars a day."

Third—It is objected that the marshal has charged mileage for going to execute a warrant in the case of U. S. v. Tolbee, and also a warrant in the case of U. S. v. Sally, although both warrants were placed in his hands at the same time, and although both of the defendants reside at the same place, and were in fact arrested there. I am of the opinion that the objection is not well taken. Section 829 allows the marshal for "travel in going to serve any warrant * * * six cents a mile, to be computed," etc. If this were all of the statute, it would be obvious enough that he is entitled to mileage on each and every warrant which is served, but the remainder of the section limits the charge when more than two writs of any kind, required to be served in behalf of the same party on the same person, might be served at the same time. In such case the marshal is entitled to compensation for travel on only two of such writs. If the meaning of the

former part of the section were at all doubtful, this limitation, by the plainest implication, gives him compensation for travel in going to serve any number of writs, provided they are in behalf of different plaintiffs or against different defendants. Here the warrants, although in behalf of the same plaintiffs, are against different defendants. Nor do I think that the provisions of section 7 of the act of 1875 affect the claim. I have already intimated that I am inclined to the opinion that the fees of the marshal for serving process issued in his own district are not modified by the act of 1875; but conceding that it does in some respects modify them, I am clear it does not exclude a charge for travel in going at the same time to serve two or more writs in behalf of different plaintiffs or against different defendants. The provision is that "no such officer shall * * * become entitled to any allowance for mileage or travel not actually and necessarily performed, under the provisions of the existing law." In my opinion this provision was intended to cut off constructive mileage only—that is, mileage allowed by section 829, to marshals, on writs coming into their hands from districts other than their own; but if it applies to writs issued and served in the same district, it changes only the mode of computing mileage. Certainly the marshal does actually and necessarily travel to serve every process placed in his hands; and, if he does so travel, he is, by the terms of section 829, and by implication of the act of 1875, entitled to charge for travel in going to serve each process to be computed by the miles actually traveled, or the distance from the place of service to the place of return, according as the act of 1875 or section 829 shall be held to furnish the rule. There is nothing in the act of 1875 to indicate that it was intended to take away from the marshal allowance for travel actually performed to which he was entitled under existing laws. This will, I think, be made plain by bringing together the provisions of the original and amendatory law.

The original act provides that the marshal shall be allowed, "For travel, in going only, to serve any process * * * six cents a mile, to be computed from the place where the process is returned to the place of service. * * * But, when more than two writs of any kind required to be served in behalf of the same party on the same person might be served at the same time, the marshal shall be entitled to compensation on only two of such writs." The amendatory act provides that "from and after the first day of January, 1875, no such officer * * * shall become entitled to any allowance for mileage or travel not actually and necessarily performed."

The last act does not in terms repeal the first, and consequently it can not be held to repeal it, except so far as the provisions of the two acts are inconsistent. Now, under

the first act, as a consequence of the rule there presented for computing "travel," the marshal was occasionally entitled to an allowance for travel not actually performed. For example, when process was sent to him from a district other than his own he was entitled to mileage to be computed not from the place where the process was received to the place of service, but from the place of service to the place of return. It was to remedy this that the amendatory act was passed. The object was to limit the allowance for travel to the miles actually traveled and not to modify the compensation for travel actually performed. The amendatory act leaves wholly unrepealed and unaffected so much of the former act as gives the marshal mileage on all process which he necessarily and actually travels to execute and which he does execute, and which are issued on behalf of different plaintiffs or different defendants.

There are several items of charge in the bill of the marshal for "actual traveling expenses." Section 829 of the Revised Statutes provides that "in all cases where mileage is allowed to the marshal he may elect to receive the same or his actual traveling expenses, to be proved on his oath to the satisfaction of the court." None of these items are proved by the oath of the marshal himself, and many of them are not proven by the oath of the bailiff who incurred the expenses. They are simply verified by the general affidavit of the deputy, in whose account they are included, to the effect that his account is correct. This proof is not satisfactory to the court. My construction of the statute is that all charges for actual traveling expenses must be proven by the oath of the marshal, deputy or bailiff who incurs such alleged expenses, and who alone can know of or be heard to testify of them, and that no deputy can be heard to testify in respect to expenses incurred by another deputy or bailiff of which he knows nothing. I am also of opinion that if these expenses can be proven otherwise than by oath in open court: if they can be proven by affidavit, the affidavit should be specific, referring to the charges particularly, and, when practicable, the proper vouchers should accompany the proof.

All items in the account not supported by this proof must be stricken out, and in lieu thereof the marshal may charge mileage. In the account of W. M. Adair, there is a charge for transporting three prisoners, Mark Gallagher, T. W. Wilson and Buck Gallagher, from Adair county to Louisville. The prisoners were arrested by different deputies or bailiffs, but they were all transported together. Still, each bailiff supplied himself with a guard, and there is a charge for his transportation.

The statute allows the marshal, for transporting criminals, ten cents a mile for himself and for each prisoner and necessary guard. The term criminals has always been construed to include prisoners arrested, charged with crime; and the term marshal has always been held to include deputy or bailiff. But there is no proof that these guards were necessary, and judging from the facts before me, I think they were unnecessary. I think three officers were sufficient to guard three ordinary prisoners.

I concede that, in this matter. much must be left to the good faith and judgment of the officer. Sitting here, I cannot ordinarily tell whether a guard is necessary or not; but I wish to say that, in respect to a privilege which is so liable to abuse, in which the officer is constantly tempted to act in his own interest, and not in the interest of the government, I shall be inclined to reject all charges for transporting guards unless I can perceive from the nature of the service that a guard was necessary, or unless the necessity for a guard be otherwise satisfactorily shown. The proof should be made by the officer employing the guard. It should also show who the guard was, and the necessity for having him, and it should, when practicable, be accompanied by the certificate of the commissioner before whom the prisoner was taken, of the presence of the guard. In case of U. S. v. Young, and Same v. Faulbree, and Same v. Roberts, the district attorney objects that the guards, for whom transportation is charged, were witnesses for the United States in said cases, who had been summoned and were paid for their mileage and attendance as witnesses, and he insists that the marshal should not be allowed for the transportation of them as guards. I am of the opinion that the objection is not well taken.

It is not disputed that the guards were necessary, and by the express terms of the statute the marshal is allowed for transporting criminals, himself and guard, ten cents each. It matters not whether the marshal pays the guard anything for his service, or whether he pays anything for transportation, he is allowed, under any and all circumstances, for transporting criminals, himself and necessary guard, a certain arbitrary, fixed fee. In the case of U. S. v. Parks, the marshal arrested one Jeree M. Parks, but he was not the person charged with the crime mentioned on the warrant, nor the person whom the United States desired to be arrested. The marshal acted in good faith, believing the person arrested to be the person whom he was directed to arrest. I am of the opinion that none of the fees charged, growing out of the arrest, can be allowed. The prisoner arrested was falsely arrested, and no lawful fee can be based on or grow out of a false imprisonment. In the case of U. S. v. Gallagher, it appears that the person who made the affidavit on which the warrant was founded did not know the Christian name of the offender, but supposed it to be "Buck;" that the name of the person whom he really accused and charged with crime is John

Gallagher; that the name "Buck" was thus by mistake inserted in both the affidavit and warrant; that the person who made the affidavit accompanied the officer to the place of arrest and pointed out to the officer John Gallagher as the person charged and as the person mentioned in the warrant.

The district attorney objects that as the warrant did not specifically direct the arrest of John Gallagher, the charges made for his arrest, transportation, etc., cannot be allowed. I am inclined to the opinion that the objection is not well taken. I think the case the converse, or very nearly, of the case last stated. I think that John Gallagher, when brought before the commissioner, could not claim his discharge on the sole ground that his name was not correctly spelt or given in the warrant. Being the person actually accused, he could not, I think, complain of a false arrest or a false imprisonment. In the case of U. S. v. Bristow, the person was arrested in the state of Tennessee, only a few yards beyond the Kentucky line. The officer acted in good faith, believing that he was in Kentucky, and that he was making the arrest in this state. I am of the opinion that the original arrest was illegal, and that the prisoner could not lawfully be held after he was brought into this state. Hooper v. Lane, 6 H. L. Cas. 443. I am of opinion, therefore, that none of the fees growing out of or connected with this arrest can be allowed. In the case of U. S. v. Howard, the marshal claims that his deputy was employed eight days in endeavoring to arrest the prisoner, and he charges for expenses while so employed two dollars per day—in all, sixteen dollars. It appears that the prisoner resided only thirty miles from the place whence the process issued, and that the bailiff was actually employed eight days "in endeavoring to arrest" is not shown by the oath or affidavit of the bailiff who made the alleged endeavor, but by the affidavit of the general deputy in whose account the charge is found, to the effect that his account is correct. I do not think this charge is sufficiently proven. It should be proven by the oath or affidavit of the bailiff who made the endeavor, and he should, when he charges for more days of endeavor than are obviously necessary, explain in his affidavit why he was employed the number of days charged, what endeavor he was making, and why the arrest was not made sooner. It is precisely in respect to these charges, where something must be left to the good faith of the officer, that there is the greatest danger of abuse. The officer is constantly tempted to charge for service which he does not perform, and the court and district attorney are limited in the opportunities to expose its error. I think, therefore, full and strict proof of all such charges should be required.

In this case I shall allow for only two days endeavor to arrest; and, consequently, will reduce the item of $16 to $4. In the case of U. S. v. Grimes, the charge is transporting himself, prisoner and guard from Columbia to Louisville, 140 miles, $42. By the route traveled the distance was actually 140 miles; but by the usual route between Columbia and Louisville the distance is only 107 miles. The route taken was by way of South Danville, and from the latter place to Louisville by railroad. The route usually taken is by way of Lebanon, and thence by railroad. The first route is often taken, and is in some respects the most comfortable and convenient, but it is not the usual one. I am of the opinion that the mileage must be computed by the route usually traveled. All the foregoing questions might and would have been decided, just as they have been, whether the rule for computing mileage on process issued and served in this district remains as fixed by the act of 1853, and section 829 of the Revised Statutes, or as is to be found in the act of 1875; but now a case has arisen in which it has become absolutely necessary to determine which statute furnishes the rule. In case of U. S. v. Johnson, the warrant was issued at Louisville and returned there. The defendant resided at Lexington. The marshal actually traveled to Lexington, ninety-three miles, to execute the warrant. There he learned the defendant had gone to Mt. Sterling—where he would probably remain two days; so, to execute the warrant, he traveled from Lexington to Mt. Sterling—Thirty-four miles. When he reached Mt. Sterling he learned that the prisoner had gone to Paris, and he followed him there, traveling eighteen miles. There he learned the prisoner had returned home. He then returned to Lexington, traveling eighteen miles, and there served the process. If the mileage is to be computed by the rule prescribed in section 829 the allowance will be limited to ninety-three miles; but if the act of 1875 furnishes the rule, then as the number of miles actually and necessarily traveled to serve the process is 163, the allowance must be for 163 miles.

Now, I think the act of 1875 was not intended to increase the mileage of marshals, but to diminish it. The complaint was not that the act of 1853 and section 829 did not allow enough mileage—the complaint was that they allowed too much. The complaint was that they allowed for mileage not traveled, and the object was to cut off all allowance for travel not performed, not to give an allowance for travel though actually performed, if it exceeded the distance from the place of return to the place of service. I have already shown that process must, unless otherwise provided by statute, be returned to the court which issues it. All process is ordinarily placed in the hands of the marshal at the place of its issue. The consequence is that a marshal can rarely, if ever, travel, in going to serve any process issued in the district in which it is served, less than

the distance "from the place of return to the place of service," but he may and often will have to travel more. The consequence is that if the act of 1875 furnishes the rule for computing mileage on process issued and executed in the same district, it has signally failed to accomplish the end intended. It has not decreased allowance for mileage, but has provided for a largely increased allowance. The act of 1853, and section 829, Revised Statutes, made an allowance for mileage not actually traveled. It allowed a marshal, who served process coming from districts other than his own, mileage to be computed "from the place of return to the place of service," though this distance might be hundreds or thousands of miles, and though he had not actually traveled to serve the process more than one mile. It was to remedy this, and this only, that in my opinion the provision found in the act of 1875 was made. It was not made to change that of which there was no complaint. But the objection that the act of 1875 should not be so construed as to alter the rule for computing mileage prescribed by section 829, on process issued and executed in the same district, does not rest solely on the ground that the evil which it was intended to remedy, so far from being cured, would be made worse. It rests also on the more rational ground that there is no express repeal of any of the provisions of the old law, and that the negative language of the act of 1875 is scarcely appropriate to an increase, but rather to a decrease of allowance for mileage.

Moreover, the policy of all the statutes of the United States regulating the fees of officers, has been to prescribe certain fixed fees easily ascertainable, leaving nothing to the discretion of the officer, as little as possible to his integrity, and as little as possible to depend on proofs. If the construction of the act of 1875 contended for be admitted; if the marshal is entitled on every process executed by him an allowance for the miles actually and necessarily traveled, then on every process served, the question will arise, what was the number of miles actually and necessarily traveled? and the court thus have much of its time consumed in determining unpleasant squabbles over fees in which the complaining party can rarely obtain any relief, since, at last, the officer making the charge will ordinarily be the only witness who will know the facts.

I shrink from such labor and from such investigations, and I shall not undertake them unless congress shall clearly impose them upon me. In all the investigations which I have ever made of the fees of marshals, I have rarely found anything wrong in those matters which are definitely fixed by statute, or are easily ascertainable by the court without reference to the oath of the officer. In almost every instance in which I have found a charge either wholly false or partially erroneous, it has depended for its verification on the discretion and good faith of the officer. So strong is the temptation to the officer to consult his own interests and to disregard that of him whom he serves; so strong is this temptation—when he may adopt without exposure either of two courses—to adopt the course which will yield him most that, in my opinion, he should, if possible, never be subjected to such temptation. His fees should, as far as possible, be fixed and definite, and not depend, except in cases which cannot be otherwise regulated, either on his discretion or integrity, or on facts which can be known to himself only. So far as this court is concerned, I shall adhere to the rule prescribed in section 829 for computing mileage on all process issued and served in this district, without reference to the number of miles actually traveled to execute it, until congress shall manifest a more certain intention to alter it than is to be found in the act of 1875.

To avoid misconception, I deem it proper to say that none of the charges which have been found to be erroneous are connected with any service rendered by the marshal himself. They all relate to service alleged to have been performed by his deputies or by bailiffs appointed by them, generally to service alleged to have been returned by the latter. The marshal himself did not suspect that any of the accounts rendered to him were incorrect. I acquit him of all blame, but in the future I shall expect him to examine and scrutinize every account before it is presented to the court, and to eliminate every item which he may deem incorrect or not proven, as required by the law as expressed in this opinion. Moreover, I shall expect him to dismiss from office every deputy who shall render to him a false account, or who shall abuse his authority by appointing bailiffs, or who shall, in any way, manifest a stronger desire to make fees than to serve the public. So many criminals attempt to avoid arrest by flight or concealment, whenever the marshal comes into their neighborhood, that it is no doubt often necessary for him to avail himself of the services of a special bailiff. I would not, therefore, restrict his authority to appoint special bailiffs; but so universal has become the practice of deputy marshals to appoint bailiffs, and the fees of the marshal have thereby been so enormously increased to the apparent gain of such deputies, that I cannot but suspect their incentive to such appointments is to make fees rather than to perform their duty. The marshal should hold every deputy to a strict account for every bailiff appointed by him.