## UNITED STATES *v.* HARMON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MAINE.

No. 649. Submitted January 6, 1893. — Decided January 16, 1893.

In a suit brought by a marshal against the United States, under the act of March 3, 1887, c. 359, (24 Stat. 505,) to recover $1770.60 as fees and disbursements of the marshal, from March, 1886, to October, 1888, the items having been disallowed by the First Comptroller: *Held*, that the Circuit Court of the United States had jurisdiction to review items disallowed by the First Comptroller before March 3, 1887, although, by § 2 of the act, jurisdiction was withheld of claims which had theretofore "been rejected, or reported on adversely, by any court, department or commission authorized to hear and determine the same."

Items for marshal's fees for distributing venires; and for amounts paid for blanks for United States attorney; and for amounts charged for marshal's travel to attend court on days when the courts were held by adjournment over an intervening day, and were not held on consecutive days, and to attend special courts or special terms of court; and for expenses in endeavoring to make an arrest; and for travel to serve precepts, where he had in his hands for service, several precepts against different persons for different causes, and made service of two or more of such precepts in the course of one trip, making one travel to the most remote point of service, but charging full travel on each precept; and for amounts paid for hack hire in transporting prisoners to and from court; allowed.

Whether the payment of the amount of the judgment in favor of the marshal will exceed the maximum compensation of the plaintiff as marshal, and the proper expenses of his office, is a matter still open for adjustment at the Treasury Department.

The Circuit Court had a right, under § 15 of the act of 1887, to award certain costs to the plaintiff, considering the frivolous and vexatious nature of the objections taken to the greater part of this claim.

THE case is stated in the opinion.

*Mr. Solicitor General* and *Mr. Felix Brannigan* for appellant.

*Mr. Edward M. Rand* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit brought in the Circuit Court of the United States for the District of Maine, February 7, 1890, by Charles B. Harmon against the United States, under the act of March 3, 1887, c. 359, (24 Stat. 505,) to recover $1770.60 as fees and disbursements of Harmon while marshal of the United States for that district, from March 9, 1886, to October 1, 1888, which were included in his account presented to the District Court, proved to its satisfaction by his oath, approved by it, forwarded to the First Auditor of the Treasury and by him to the First Comptroller, and disallowed by the latter, the items of the same being set forth in detail in schedules annexed to the petition.

The United States, by a plea in the nature of *non assumpsit*, put in issue the plaintiff's right to recover. The suit, under the requirement of § 2 of the act of 1887, was tried by the court without a jury.

There was filed the following admission in writing, signed by the district attorney of the United States: "In the above-entitled cause it is admitted, on behalf of respondent, that the services charged in the petition and schedules were actually rendered; that the disbursements charged were actually made in lawful money; and that the sums charged as paid to witnesses were actually and in every instance paid upon orders issued in due form, either by court or a commissioner of the Circuit Court, in the respective cases."

The case, as now presented before us, involves only items

numbered 2, 3, 4, 5, 6 and 9, discussed in the opinion of the Circuit Court.

There was filed, before the hearing, an "agreed statement of facts," signed by the attorneys for both parties, the only parts of which that it is important to recite being as follows:

"First. — As to jurisdiction:

"That of the total amount claimed by petitioner, items amounting to $140.32 were disallowed by the First Comptroller prior to March 3, 1887.

"Second. — As to the items claimed:

"That they are correctly classified and set forth in the abstract of schedules annexed to brief of petitioner.

"Third. — As to the several classes of claims:"

"2. Distributing venires, marshal's fees, $186.

"That, if the marshal is entitled to a fee of $2 for each venire distributed to the several constables, he is entitled to the amount claimed, but it is claimed by respondent that said amount was erroneously charged in the marshal's account as mileage, and was for that reason disallowed by the Comptroller.

"3. Paid for blanks for U. S. attorney, $14.

"That upon requisition of the U. S. attorney, approved by the Attorney General, this amount was paid by the marshal for blank indictments and informations for the necessary use of the U. S. attorney. That a similar charge has since been allowed by the Comptroller.

"4. Marshal's travel to attend court, $156.60.

"That of the amount claimed, $118.80 is for travel to attend regular terms of the Circuit and District Courts, and that one travel, $1.80, has been allowed and paid to the marshal for travel at each of said terms.

"That said $118.80 is charged for travel on days when said courts were held by adjournment over an intervening day, and were not held on consecutive days.

"That the remaining sum of $37.80 is charged for travel to attend 21 special courts or special terms of the District Court. That the docket of the District Court shows that said 21 special courts or special terms were duly held.

" 5. Expenses endeavoring to arrest, $4.

" That this charge for two days at $2 was disallowed by the First Comptroller solely because he claimed it was not charged in the proper account.

" 6. Travel to serve precepts, $237.60.

" That in some instances the officer had in his hands for service several precepts against different persons for different causes, and made service of two or more of such precepts in the course of one trip, making but one travel to the most remote point of service, but charging full travel on each precept. The following item, viz. :

" ' 1886, April 24. In U. S. v. Jeffrey Gerroir, travel to serve subpœna from Circuit Court, Massachusetts District, at Cranberry Isle, 314 miles, $18.84,' is suspended by Comptroller because the only actual travel was from Portland to Cranberry Isle, say 206 miles. If travel as charged is not to be allowed, then this charge should be for 206 miles, $12.36. That in serving a warrant of removal (in every instance within this district) or warrant to commit, the marshal has charged travel, while the Comptroller claims that, transportation of officer and prisoner being allowed, no travel can be charged."

" 9. Transporting prisoners to and from court, $78.

" That this amount was actually paid for hack hire in accordance with the usual practice, and that the charge had always before been allowed. The Comptroller claims that the amount was excessive and the use of hacks unnecessary."

" Fourth. — As to the allegations in the petition :

" That the marshal duly rendered his accounts as stated, and that the same were duly presented to the court and approved and forwarded to the accounting officer of the Treasury, as alleged."

The case was tried before Mr. Justice Gray and Judge Colt, Circuit Judge, and the opinion of the court was given by Mr. Justice Gray. 43 Fed. Rep. 560. The court found for the petitioner for the whole of his claim except $6.48, and rendered judgment in his favor for $1764.12 and $59.15 costs. It also, in pursuance of § 7 of the act of 1887, specifically

found the facts of the case to be as so admitted and agreed. The United States, within six months, filed a petition alleging errors and praying an appeal, which was allowed.

A material question in the case is, whether the Circuit Court had jurisdiction to pass upon those items of the claim, amounting to $140.32, which were disallowed by the First Comptroller before March 3, 1887. By § 2 of the act of that date, the Circuit and District Courts of the United States are vested with concurrent jurisdiction (within certain limits as to amount) of all matters which, by § 1 of the act, "the Court of Claims shall have jurisdiction to hear and determine," including "all claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States, either in a court of law, equity or admiralty, if the United States were suable : *Provided*, however, that nothing in this section shall be construed as giving to either of the courts herein mentioned jurisdiction to hear and determine claims growing out of the late civil war, and commonly known as 'war claims,' or to hear and determine other claims which have heretofore been rejected, or reported on adversely, by any court, department or commission authorized to hear and determine the same."

The question is, whether claims disallowed by the First Comptroller prior to March 3, 1887, were claims which, under § 1 of the act of that date, had been, prior to its passage, "rejected or reported on adversely, by any court, department or commission authorized to hear and determine the same."

It is contended for the United States, that, except where Congress, by special law, empowers some court or executive officer to hear and determine a claim against the United States, the accounting officers of the Treasury Department alone have the power to hear and determine it; that under § 236 of the Revised Statutes, "all claims and demands, whether by the United States or against them, and all ac-

counts whatever in which the United States are concerned, either as debtors or as creditors, shall be settled and adjusted in the Department of the Treasury;" that, as to marshal's accounts, their settlement and adjustment belong to the First Auditor and the First Comptroller alone, under §§ 269 and 277 of the Revised Statutes; that, prior to the act of 1887, the only remedies existing in favor of marshals, as against the action of the accounting officers, were, in proper cases, by set-off in the Circuit or District Courts, or by suits in the Court of Claims; that, prior to the establishment of the Court of Claims, the settlement and adjustment of accounts by the accounting officers of the Treasury Department, and their final action on claims and accounts, were regarded by all the departments of the government as a final determination, adjustment and adjudication of the claims and accounts so passed upon; that, in respect to hearing such claims, the accounting officers constituted the "department" which heard and determined them; that their powers came within the very terms of the act of 1887; that the act of 1887 cannot be construed so as to apply only to claims determined by courts and special tribunals; that, when the accounting officers of the United States settle accounts and claims, they are authorized to hear and determine them, and to reject or report adversely such claims or items as, in their judgment, should be disallowed; and, therefore, that the claims so reported are rejected by a department authorized to hear and determine them within the meaning of the act of 1887.

But we concur with the views of the Circuit Court on this point, which, in its opinion delivered by Mr. Justice Gray, are expressed as follows: " Upon the question whether a disallowance of an account by the First Comptroller of the Treasury is within the latter part of this proviso, there has been a diversity of judicial opinion. The Circuit Court for the Eastern District of Missouri held that it was, and its decision was followed by the District Court in this district, as well as in the Eastern District of Missouri. *Bliss* v. *United States*, 34 Fed. Rep. 781; *Rand* v. *United States*, 36 Fed. Rep. 671; *Preston* v. *United States*, 37 Fed. Rep. 417. But the opposite view has

since been maintained, on fuller consideration, by the District Court in Connecticut, in Georgia, and in Illinois. *Stanton* v. *United States*, 37 Fed. Rep. 252; *Erwin* v. *United States*, 37 Fed. Rep. 470; *Hoyne* v. *United States*, 38 Fed. Rep. 542.

"The earlier decisions are based upon § 269 of the Revised Statutes, by which it is made the duty of the First Comptroller 'to superintend the adjustment and preservation of the public accounts subject to his revision;' and upon § 191, which is as follows: 'The balances which may from time to time be stated by the Auditor and certified to the heads of departments by the Commissioner of Customs, or the Comptrollers of the Treasury, upon the settlement of public accounts, shall not be subject to be changed or modified by the heads of departments, but shall be conclusive upon the executive branch of the government, and be subject to revision only by Congress or the proper courts. The head of the proper department, before signing a warrant for any balance certified to him by a Comptroller, may, however, submit to such Comptroller any facts in his judgment affecting the correctness of such balance, but the decision of the Comptroller thereon shall be final and conclusive, as hereinbefore provided.'

"The clause of § 269, as to the general duty of the Comptroller to superintend the adjustment and preservation of public accounts subject to his revision, is a reënactment of a provision of earlier acts, reaching back to the foundation of the government. Acts of September 2, 1789, c. 12, § 3, 1 Stat. 66; March 3, 1817, c. 45, § 8, 3 Stat. 367; March 3, 1849, c. 108, § 12, 9 Stat. 396.

"Section 191 is a reënactment of the act of March 30, 1868, c. 36, 15 Stat. 54. Before that act it was settled by a series of opinions of successive Attorneys General that the action of the Comptroller, or of the Commissioner of Customs, was subject to the revision of heads of departments. See Opinion of Attorney General Stanbery, of September 15, 1866, and earlier opinions therein referred to. 12 Opinions of Attorneys General, 43. The action of accounting officers of an executive department was never considered as a conclusive determination when the question was brought before a court of justice. Acts

of March 3, 1797, c. 20, 1 Stat. 512; May 15, 1820, c. 107, § 4, 3 Stat. 595; Rev. Stat. § 3636; *United States* v. *Jones*, 8 Pet. 375, 384; *United States* v. *Bank of Metropolis*, 15 Pet. 377, 401; 1 Opinions of Attorneys General, 624; 5 Opinions of Attorneys General, 650.

" The sole purpose and effect of the act of 1868 were to regulate the business of the executive departments; to define the comparative powers of the Comptrollers or the Commissioner of Customs on the one hand, and of the heads of departments on the other, in the performance of their executive and ministerial duties; and to make the decision of a Comptroller or of the Commissioner of Customs final and conclusive, so far as the executive department was concerned, but not to affect the powers of the legislature or of the judiciary.   13 Opinions of Attorneys General, 5; 14 Opinions of Attorneys General, 65; 15 Opinions of Attorneys General, 192, 596, 626; *Delaware Steamboat Co.* v. *United States*, 5 C. Cl. 55.

" The act itself, after providing that the balances certified to the heads of departments by the Comptroller, or by the Commissioner of Customs, upon the settlement of public accounts, shall not be subject to be changed or modified by the heads of departments, but shall be ' conclusive upon the executive branch of the government,' adds in equally unequivocal terms, ' and be subject to revision only by Congress or the proper courts; ' and the further provision, which makes the decision of the Comptroller upon facts submitted to him by the head of a department ' final and conclusive,' reserves the legislative and the judicial authority with equal clearness by the qualifying words ' as hereinbefore provided.'   Act of March 30, 1868, c. 36, 15 Stat. 54; Rev. Stat. § 191.

" The judgments of the Court of Claims, and of the Supreme Court on appeal from its decisions, accord with this view, and uniformly treat the action of the accounting officers as not conclusive in a suit between the United States and the individual. *McElrath* v. *United States*, 12 C. Cl. 201, and 102 U. S. 426, 441; *Chorpenning* v. *United States*, 11 C. Cl. 625, and 94 U. S. 397, 399; *Pittsburg Savings Bank* v. *United States*, 16 C. Cl. 335, 351, 352, and 104 U. S. 728, 734; *Wallace*

v. *United States*, 20 C. Cl. 273, and 116 U. S. 398; *Saunders* v. *United States*, 21 C. Cl. 408, and 120 U. S. 126.

"In § 1 of the act of March 3, 1887, c. 359, the words 'hear and determine' are used four times; once as applied to the Court of Claims, twice as applied to that court and to the Circuit and District Courts, and again as applied to 'any court, department or commission.' These words must be taken to be used in each instance in the same sense, and as implying an adjudication conclusive as between the parties, in the nature of a judgment or award. The proviso that nothing in this section shall be construed as giving to either of the courts named in the act jurisdiction to hear and determine any claims 'which have heretofore been rejected, or reported on adversely, by any court, department or commission authorized to hear and determine the same' must be limited to a rejection of a claim, or an adverse report thereon, by a court, department or commission, which determines the rights of the parties, such as the approval by the Secretary of the Treasury of an account of expenses under the captured and abandoned property acts, as in *United States* v. *Johnston*, 124 U. S. 236, or the decision of an international commission, as in *Meade* v. *United States*, 9 Wall. 691.

"Moreover, the Court of Claims, even before the passage of the act of 1887, had jurisdiction of claims under an act of Congress or under a contract, and could therefore hear and determine claims for legal salaries or fees. *Mitchell* v. *United States*, 18 C. Cl. 281, and 109 U. S. 146; *Adams* v. *United States*, 20 C. Cl. 115; *United States* v. *McDonald*, 128 U. S. 471; *United States* v. *Jones*, 131 U. S. 1, 16.

"We cannot believe that the act of 1887, entitled 'An act to provide for the bringing of suits against the government of the United States,' and the manifest scope and purpose of which are to extend the liability of the government to be sued, was intended to take away a jurisdiction already existing, and to give to the decisions of accounting officers an authority and effect which they never had before."

Item 2 is as follows: "Distributing venires, marshal's fees, $186." As to this item, the agreed statement of facts says:

"That, if the marshal is entitled to a fee of $2 for each venire distributed to the several constables, he is entitled to the amount claimed, but it is claimed by respondent that said amount was erroneously charged in the marshal's account as mileage, and was for that reason disallowed by the Comptroller." As to this item 2, the Circuit Court in its opinion says: "In this district the jurors being drawn by constables in accordance with the laws of the State, the fees paid by the marshal to the constables for their services, as well as those charged by him for his own services, in distributing venires, are in accordance with the express words of the Revised Statutes, § 829, cl. 3, and with the settled course of decision in this circuit. *United States* v. *Cogswell*, 3 Sumner, 204; *United States* v. *Smith*, 1 Woodb. & Min. 184; *United States* v. *Richardson*, 28 Fed. Rep. 61, 73." In the case last cited the mode of summoning jurors in the First Circuit is fully explained. As to this item 2, all that the counsel for the United States says is, that the finding as to it is not of fact, but is a mere conclusion of law, and therefore is error. We do not perceive that there is any error.

Item 3 is as follows: "Paid for blanks for U. S. attorney, $14." As to this item 3, the agreed statement of facts says: "That upon requisition of the U. S. attorney, approved by the Attorney General, this amount was paid by the marshal for blank indictments and informations for the necessary use of the U. S. attorney. That a similar charge has since been allowed by the Comptroller." As to this item 3, the Circuit Court says: "The sums paid by the marshal, upon the requisition of the district attorney, approved by the Attorney General, for blank indictments and informations for the necessary use of the district attorney, having been paid by the marshal with the approval of the Attorney General, exercising the general supervisory power conferred by Rev. Stat. § 368, the marshal is entitled to be repaid those sums." All that the counsel for the United States says, in regard to item 3, is, that the item is payable only out of the earnings of the district attorney and is a part of his office expenses, and that the marshal cannot be allowed credit for that item, because there

is no law authorizing or making appropriation for such blanks. We think that item 3 is allowable.

Item 4 is as follows: "Marshal's travel to attend court, $156.60." As to this item 4, the agreed statement of facts says: "Of the amount claimed $118.80 is for travel to attend regular terms of the Circuit and District Courts; and one travel, $1.80, has been allowed and paid to the marshal for travel at each of said terms. That said $118.80 is charged for travel on days when said courts were held by adjournment over an intervening day, and were not held on consecutive days. That the remaining sum of $37.80 is charged for travel to attend twenty-one special courts or special terms of the District Court. That the docket of the District Court shows that said twenty-one special courts or special terms were duly held." As to this item 4, the Circuit Court says: "By the Rev. Stat. § 829, cl. 24, the marshal is to be allowed 'for travelling from his residence to the place of holding court, to attend a term thereof, ten cents a mile for going only.' This allowance is not expressly, or by any reasonable implication, restricted to a single travel at each term, but extends to every time when he may be expected to travel from his home to attend a term of court. If the court sits for any number of days in succession, he should continue in attendance, and is entitled to only one travel. But, if the court is adjourned over one or more intervening days, he is not obliged to remain at his own expense at the place of holding court but may return to his home, and charge travel for going anew to attend the term at the day to which it is adjourned. His right to charge travel for going to each special court or special term is, if possible, still clearer, and is scarcely contested." The counsel for the United States says that this item is for mileage of the marshal for travelling more than once from his residence to attend a term of court, and is for travel caused by temporary adjournments of the court for a day or two during a term thereof, the marshal preferring to go home rather than to remain at his own expense at the place of holding the court; that a fair reading of § 829 of the Revised Statutes forbids more than one mileage for going to attend a term of court;

that it allows the marshal "for travelling from his residence to the place of holding court, to attend a term thereof, ten cents a mile for going only," and does not say that he shall have such mileage for each time he travels from his place of residence to the place of holding court during a term thereof. No suggestion is made, on behalf of the United States, that, if item 4 is legal, the amount allowed is unreasonable. We think that the item was properly allowed.

Item 5 reads as follows: "Expenses endeavoring to arrest, $4." As to this item 5, the agreed statement of facts says: "That this charge for two days at $2 was disallowed by the First Comptroller solely because he claimed it was not charged in the proper account." As to item 5, the Circuit Court says: "The charge for expenses in endeavoring to make an arrest was no more than the statute permits to be allowed. Rev. Stat. § 829, cl. 18." As to this item 5, the counsel for the United States says that the finding is defective; that it is not shown that the expenses amounted to $2 a day; and that the fee bill allows necessary expenses only, and not exceeding $2 a day. We think the item is covered by the admission that the services charged in the petition were actually rendered and that the disbursements charged were actually made in lawful money. This $4 is for "expenses."

Item 6 is as follows: "Travel to serve precepts, $237.60." In regard to item 6, the agreed statement of facts says: "That in some instances the officer had in his hands for service several precepts against different persons for different causes, and made service of two or more of such precepts in the course of one trip, making but one travel to the most remote point of service, but charging full travel on each precept. The following item, viz.: '1886, April 24. In U. S. v. Jeffrey Gerroir, travel to serve subpœna from Circuit Court, Massachusetts District, at Cranberry Isle, 314 miles, $18.84,' is suspended by Comptroller because the only actual travel was from Portland to Cranberry Isle, say 206 miles. If travel as charged is not to be allowed, then this charge should be for 206 miles, $12.36. That in serving a warrant of removal (in every instance within this district) or warrant to commit, the marshal has

charged travel, while the Comptroller claims that, transportation of officer and prisoner being allowed, no travel can be charged." In regard to item 6, the Circuit Court says : " The general rule prescribed by Rev. Stat. § 829, cl. 25, allows the marshal 'for travel, in going only, to serve any process, warrant, attachment or other writ, including writs of subpœna in civil or criminal cases, six cents a mile, to be computed from the place where the process is returned to the place of service.' The explanatory or restrictive provisions as to the cases of two persons served with the same precept, and of more than two writs in behalf of the same party against the same person, emphasize the general rule, and confirm its application to several precepts against different persons for different causes, although served at the same time. This clause of the fee bill, which allows for travel in going only, as a compensation for actual travel in both going and returning, is wholly independent of, and unaffected by, the distinct clause allowing fees for transportation of officer and prisoner, only while the officer has the prisoner in custody, and without any regard to any additional distance which he may be obliged to travel out and back in serving the warrant of arrest or removal. The United States rely on the act of February 22, 1875, c. 95, § 7, which, after providing that all accounts of attorneys, marshals and clerks for mileage and expenses shall be audited, allowed and paid as if the act of June 16, 1874, c. 285, had not been passed, further provides that 'no such officer or person shall become entitled to any allowance for mileage or travel not actually and necessarily performed under the provisions of existing law.' 18 Stat. 334. We concur in the opinion of Attorney General Devens that this last provision, which manifestly includes marshals, does not deny a marshal full travel on two or more writs in his hands at the same time and served at the same place on different persons, inasmuch as his travel is actual and necessary to serve each and every of those writs ; but that 'that provision was intended to apply to cases in which no actual travel is performed in serving process, as, for instance, where the writ is sent through the mail to be served by a deputy at or near the place of service.' 16 Opinions of

Attorneys General, 165, 169. It follows that by the statute of 1875 the travel to be allowed to the marshal for serving at Cranberry Isle a subpœna from the Circuit Court for the District of Massachusetts must be limited to his actual travel within his district from Portland to Cranberry Isle, and cannot include the constructive travel from Boston to Portland, amounting to $6.48, and that the marshal is entitled to recover the rest of the sums charged for travel to serve precepts." In regard to item 6, the counsel for the United States says that the claim is for travel fee on more than one writ, the writs being served on different persons, in different causes in the course of one trip ; and that the same question is involved in No. 783, *United States* v. *Fletcher*, submitted at this term. The counsel for the United States, in his brief in No. 783, relies on the same provision of the act of February 22, 1875, c. 95, § 7, (18 Stat. 334,) which, recited above, referring to clerks, marshals, etc., provides that "no such officer or person shall become entitled to any allowance for mileage or travel not actually and necessarily performed under the provisions of existing law." But we think the view of Attorney General Devens, in his opinion of October 10, 1878, (16 Op. Att. Gen. 165, 169,) cited and quoted in the opinion of the Circuit Court in the present case, is the correct view on the subject; and that the item was properly allowed.

Item 9 is as follows: "Transporting prisoners to and from court, $78." In regard to item 9, the agreed statement of facts says: "That this amount was actually paid for hack hire in accordance with the usual practice, and that the charge had always before been allowed. The Comptroller claims that the amount was excessive and the use of hacks unnecessary." In regard to item 9, the Circuit Court says: "The hire of hacks to transport prisoners to and from court is agreed to have been in accordance with the usual practice, and to have always before been allowed, and must be presumed to have been required by the court for the prompt despatch of business." The counsel for the United States claims that it is contrary to law to allow that item ; and that the service is covered by the *per diem* fee of $5 for attending court and bringing in and

committing prisoners and witnesses. But the $5 a day is given to the marshal for his attendance; and it must be presumed that the hack hire was necessary for the prompt despatch of business and for preventing the escape of prisoners. We think the item was properly allowable; and that there is no clear and unequivocal proof of mistake, as against the approval by the Circuit Court, within the principle laid down in *United States* v. *Jones*, 134 U. S. 483, 488.

It is also contended by the counsel for the United States that the Circuit Court erred in rendering its judgment in favor of the plaintiff for $1764.12, in the absence of a finding that the payment of that sum would not exceed the maximum compensation of the plaintiff as United States marshal, and the proper expenses of his office. But we think that is a matter which still remains open for adjustment at the Treasury Department.

The Circuit Court, under the discretion given to it by § 15 of the act of 1887, c. 359, 24 Stat. 505, 508, awarded to the plaintiff $59.15 costs, "considering the frivolous and vexatious nature of the objections taken to the greater part" of his claim. The items of costs allowed are not objected to, and do not appear in the record sent up. It must be assumed that the costs were taxed in accordance with the statute, which says that the costs "shall include only what is actually incurred for witnesses, and for summoning the same, and fees paid to the clerk of the court."

*Judgment affirmed.*