## NIXON v. UNITED STATES.

### (District Court, E. D. Tennessee. May 8, 1897.)

1. **UNITED STATES MARSHALS—"ENDEAVOR EXPENSES"—VOUCHERS.**

    A marshal cannot recover in a suit against the government a charge of two dollars a day, under Rev. St. § 829, allowing him the sum actually expended in endeavoring to make an arrest under process, not to exceed two dollars a day, in addition to his compensation for service and travel, where his claim is not supported by vouchers or an itemized statement, and was for that reason disallowed by the comptroller.

2. **SAME — MILEAGE — SERVING SUBPŒNA IN CRIMINAL CASES BEFORE COMMISSIONERS.**

    Where a United States commissioner, on issuing the warrant for the arrest of a person charged with the violation of the internal revenue laws, at the same time issued subpœnas for witnesses to be used to sustain such charge, which subpœnas were left blank as to time and place of return until return was made, the practice being for the marshal to serve such subpœnas only in case the arrest was made, the marshal is entitled, under Rev. St. § 829, to mileage on such subpœnas, when served, from the place of return to the place of service, the same as though issued after the warrant had been served and returned.

3. **SAME—TRANSPORTATION OF PRISONER.**

    Where a defendant committed by a United States commissioner is confined in the nearest jail to await the action of the grand jury, and after indictment, on an order to bring him into court, is taken from such jail to court, the marshal is not entitled, in addition to the mileage allowed by Rev. St. § 829, "for transporting criminals," to treat the order as an original process, and charge thereon two dollars for service, and mileage at the rate of six cents from the place of holding court to the jail.

4. **SAME—ATTENDANCE BEFORE COMMISSIONER.**

    A marshal attending criminal examinations in separate and distinct cases on the same day, before the same commissioner, is not entitled to fees in each case, but only to the two dollars per diem allowed by Rev. St. § 829.

Action by W. M. Nixon against the United States to recover fees earned as marshal. Heard on exceptions to master's report.

Pritchard & Sizer, for complainant.

James H. Bible, U. S. Atty.

CLARK, District Judge. This suit is brought by the plaintiff against the United States to recover upon an account for fees alleged to be due to plaintiff as United States marshal for the Eastern district of Tennessee, his term of office extending from August 27, 1887, to April 13, 1889. The fees claimed are for services of different kinds. The case has been referred to a special master, and the questions are now raised by the exceptions to the master's report. The litigation has been limited by the reference and the exceptions. The fees claimed were disallowed by the comptroller of the treasury, and hence the present suit. These exceptions do not raise any question of fact, but proceed upon the ground that, taking the facts as found by the special master. there is error in the conclusions of the master upon these facts. This renders it unnecessary in this opinion and finding to discuss the facts, and reference to the report of the special master is sufficient.

It is well to keep in view, in the examination of the specific exceptions, the general rule of law applicable to fees and costs claimed as against the public, which was stated in U. S. v. Shields, 153 U. S. 91, 14 Sup. Ct. 736. as follows:

"Fees allowed to public officers are matters of strict law, depending upon the very provisions of the statute. They are not open to equitable construction by the courts, nor to any discretionary action on the part of the officials."

This is a rule of interpretation of general application to costs and fee bills.

The first exception is to the ruling of the master in disallowing the claim for certain "endeavor expenses," because not supported by vouchers nor by itemized account. The particular clause of section 829 of the Revised Statutes on which this claim is based is as follows:

"For expenses while employed in endeavoring to arrest, under process, any person charged with or convicted of a crime, the sum actually expended, not to exceed two dollars a day, in addition to his compensation for service and travel."

The master finds that a report by a special examiner of the department of justice was made to the attorney general April 12, 1888, recommending the disallowance of various items in an account of the present petitioner. Among the reasons stated for the disallowance was the following:

"Neither has the marshal in a single instance, as far as I can learn, furnished the department with vouchers for these expenses of arrest, which should, under the regulations of the treasury department, be attached to each charge of such a nature. Strict justice would doubtless strike out every 'endeavor to arrest' and every charge for 'subsistence of prisoners' found in the marshal's account unless itemized for each day, and only the amount actually expended therein, not exceeding the limit charged for one day, viz. two dollars ($2.00). The department of justice, in the register of said department, especially calls the attention of officials to this matter in circular of 'Instructions as to Accounts,' page 243."

And the master finds that a copy of this report was mailed to the petitioner May 18, 1888, from which it is, of course, found that the marshal had express notice of the ground on which the items in his accounts were disallowed. It would seem to be clear, therefore, that if the comptroller might lawfully require specific items or vouchers for items, which make up an account for expenses of this kind, the disallowance of the account for such expense was proper. In U. S. v. Fletcher, 147 U. S. 666, 13 Sup. Ct. 435, the supreme court said:

"The comptroller, however, had a right to require items of these expenses to be furnished. The smallness of the amount allowable under the statute does not affect the principle, unless at least a showing be made that it is impossible to furnish the particulars."

See, also, In re Crittenden, 6 Fed. Cas. 816.

If, therefore, as thus decided, the comptroller may require, as a condition of allowing a claim of this character, that it shall be supported by an itemized account or vouchers, it necessarily follows that when the account is disallowed for this or any other legally valid reason, suit cannot be successfully maintained against the government without supporting the account with the same character of evidence. The marshal obviously cannot be permitted to present to the treasury for approval an account without items or vouchers legally required by the treasury officials, and, when the account is disallowed, institute suit and recover judgment against the United States upon a lump sum charged, being the maximum amount allowed by law, as is done here. To rule that he may do so would be manifestly inconsistent with the holding that the comptroller may require the items or vouchers for the items of the account. The brief, in support of this exception, proceeds largely upon the ground that the marshal is allowed the absolute or lump sum of two dollars per day, not only for the purpose of covering actual expenses, but as compensation, to an extent, for the time required in the service. The statute plainly, however, allows only actual expenses, and provides an express limit beyond which the marshal is not permitted to go in the actual expenses incurred, and no claim for time is allowed by the terms of the statute, or any just inference therefrom. Exception 1 is therefore overruled.

Exception 2 raises by far the most serious question in this case. The claim in this item of the account is for mileage charged for traveling to execute subpœnas in criminal cases instituted before United States commissioners. The facts, as found by the special master, are these: United States commissioners are in the habit of issuing warrants for the arrest of a defendant charged with a violation of the internal revenue law, and, with such warrants, would issue a subpœna for the witness or witnesses whose testimony was intended to sustain the charge; and the practice was, in case the marshal should find and arrest the defendant, to proceed to execute the subpœna for the witnesses to appear before the commissioner, and before whom the defendant was to be taken. In the event the defendant was not found and the warrant of arrest not executed, the subpœna, of course, could not be executed, and there would be no case set and no trial at which the witnesses could appear. The subpœna, in such cases, did not direct the marshal to summon the witnesses before any particular com-

missioner, nor to attend at any time or place. The subpœna was necessarily issued in blank in these respects, and was completed on the marshal's return of the subpœna when executed, whereon the time and place of trial and the commissioner and particular case were given. It is certain, therefore, that the command in the subpœna to summons was in fact understood both by the commissioners and the marshal to be a conditional direction, and this process was to be executed only in the event the warrant of arrest should first be executed. The report of the master proceeds upon the ground that a subpœna in the hands of the marshal under such circumstances was not a complete process or authority in fact on which the marshal might lawfully travel, but was only process to be executed on condition, and that no service could have been rendered with respect to this particular process, such as would authorize the mileage charge for its execution, until after the warrant of arrest was executed, when, for the first time, the subpœna would become a complete authority to the marshal to execute, on which he did or could lawfully travel. It is not disputed that where, in fact, after execution of the warrant of arrest, the marshal traveled further to execute a subpœna, under such circumstances the additional travel was paid for. The contention for the marshal is that mileage may be lawfully charged on the subpœna, just as on the warrant of arrest, both being in his hands during the travel; and the case of U. S. v. Harmon, 147 U. S. 268, 13 Sup. Ct. 327, is relied on to sustain this contention. The district attorney relies in part upon section 7 of the act of 1875 (18 Stat. 334), providing that "no person shall be entitled to an allowance for mileage or travel not actually or necessarily performed"; but in U. S. v. Fletcher, 147 U. S. 666, 13 Sup. Ct. 434, it was said that this provision refers only to cases in which process is sent by mail to a deputy to be served at a place remote from the office whence the process has issued. And this view would make that provision of the statute inapplicable to the present case. Under the existing law, no such practice as that now in question is any longer possible.

In the case of U. S. v. Harmon, 147 U. S. 279, 13 Sup. Ct. 329, the agreed statement of the facts was as follows:

"That in some instances the officer had in his hands for service several precepts against different persons for different causes, and made service of two or more such precepts in the course of one trip, making but one travel to the most remote point of service, but charging full travel on each precept."

And the same interpretation was put upon this statute (Stat. 1875, § 7), in U. S. v. Harmon, 147 U. S. 280, 13 Sup. Ct. 327, the court in that respect concurring in the opinion of Atty. Gen. Devens, 16 Op. Attys. Gen. U. S. 165–169. In U. S. v. Harmon, as will appear from the agreed statement of facts, the writs in the hands of the officers were against different persons, and in different cases, while in the case under consideration the warrant of arrest and subpœna are precepts in the same case, but for different persons; and this fact of the warrant and subpœna being in the same case is the only ground for maintaining a distinction between that case and this, so far as the right to the mileage charge is concerned. And whether that fact does authorize or require a different ruling is a close question. It may

be observed just here that according to the very terms of the statute the mileage charge allowed is "six cents a mile, to be computed from the place where the process is returned to the place of service, or, when more than one person is served therewith, to the place of service which is most remote, adding thereto the extra travel which is necessary to serve it on the others." The officer, in the execution of process, therefore, is not entitled to charge mileage on the distance traveled from the place where the warrant is issued or delivered to him unless this is the same place, or the process issued by the same commissioner before whom the case is returned, although it is said that the distance is often computed from the place where the precept is issued or delivered to the marshal to that where it is served. Such being the rule prescribed by the statute for computing the mileage, the expense to the government is not different from what it would be if the subpœna for the witness were not in fact issued or served until after the arrest of the defendant and the return of the case before the commissioner. The marshal has not in the account sued on attempted to charge mileage on more than one subpœna in the same case in which a similar charge is made for executing the warrant of arrest. The allowance of six cents a mile for travel in going to serve any process includes "writs of subpœna in civil or criminal cases," and the argument of the district attorney is that until execution of the warrant of arrest and return of the case before a commissioner there is no case pending, and that the fee cannot, for this reason, be allowed, aside from other objections; and Southworth v. U. S., 151 U. S. 185, 14 Sup. Ct. 274, is relied on. But that case is clearly not in point. The court was considering whether or not the mere filing of a complaint and issue of a warrant were sufficient to entitle a commissioner to the $10, under section 1986 of the Revised Statutes, providing: "And where the proceedings are before a commissioner, he shall be entitled to a fee of ten dollars for his services in each case, inclusive of all services incident to the arrest and examination." It was clear, as the court observed, that where no arrest had been made, and no examination took place before the commissioner, there was no case, within the meaning of section 1986, entitling the commissioner to the fee therein provided. No question is made in the case as to the jurisdiction or power of the commissioner to issue a blank subpœna, as was done in these cases, before arrest and return before a commissioner. If it should be held that the process or subpœna was for this reason void, this would not, as a rule, help the case of the government as the law was at the time the process in these cases was executed, for, as we have seen, if subpœna could not rightfully issue until arrest of the defendant and return of the case, it would then not admit of question that in the separate travel to execute the subpœna the marshal would be entitled to the mileage fee allowed by the statute. The exact form of these subpœnas, and how far they were complete or incomplete on their face, is not disclosed by anything in this record, and, as stated, no question is made as to the validity of the subpœna in the brief or exceptions.

As will be seen, and as has already been intimated, the case, in respect to the point now considered, is not distinguishable from U. S.

v. Harmon, 147 U. S. 280, 13 Sup. Ct. 327, except in the fact alone that the separate writs here were in the same case, while there the writs were in different cases. The ruling in U. S. v. Harmon evidently proceeded upon the view that the service of both processes on the same trip was an accidental circumstance, not occurring in the regular course of procedure. And so here the fact that the marshal might be able to serve the subpœna and the warrant of arrest on the same trip would depend upon the fact that the defendant and the witness or witnesses might be found at the same place, or on the same trip. It must be noted that the reasoning of the special master proceeds upon the ground that the mileage fee which the marshal may charge is from the point of issue of the warrant to the place of arrest, whereas it appears from the very terms of the statute that the mileage is computed from the place where the case is returned to the place of service, and this place may be, and justly should be, the nearest United States commissioner. Indeed. under the present law, the marshal is required to return the case before the nearest commissioner to the place of service, but was not required to do so under the law as it existed at the time the account now in question was made. It is very true that Judge Ballard, in the Crittenden Case, above referred to, entertained the opinion that the place where the process was returned was necessarily to the court issuing the process, for otherwise it was said that the court could never know whether its writs had been executed as commanded or not. Of course, under such view as that, the conclusion was reached that the place of return and the place of issue were necessarily the same, and could not be different. Such an opinion, however, could only be sustained by putting proceedings before the United States commissioners on the same footing as suits in courts of record of general jurisdiction, and having power to try the merits and administer final justice; and it is under a view such as this that Judge Ballard proceeds in the opinion referred to. It is perfectly obvious, however, that United States commissioners, as committing officers, sustain towards courts of the United States the same relation that justices of the peace in the several states sustain towards the state courts of general jurisdiction. The procedure is precisely similar to that before a committing magistrate under the common law of England. At the common law, a warrant issued by one of these committing examiners or magistrates might be general, commanding the officer to bring the party before any justice of the peace of the county; or special, to bring him before the justice who granted the warrant. If it were general, the election of the magistrate before whom the defendant should be taken lay entirely with the officer making the arrest. 4 Cooley's Bl. Comm. 291; also 2 Hawk. P. C. 85. In Todd v. U. S., 158 U. S. 282, 283, 15 Sup. Ct. 890, the court said:

"That a commissioner is not a judge of a court of the United States within the constitutional sense is apparent and conceded. He is simply an officer of the circuit court, appointed and removable by that court. Rev. St. § 627; Ex parte Hennen, 13 Pet. 230; U. S. v. Allred, 155 U. S. 591, 15 Sup. Ct. 231. A preliminary examination before him is not a proceeding in the court which appointed him, or in any court of the United States. Such an examination may be had, not merely before a commissioner, but also before any justice or judge of the United States, or before any chancellor, judge of a state court, mayor of a city,

justice of the peace, or other state magistrate. Rev. St. § 1014. And it cannot be pretended that one of those state officers, while conducting a preliminary investigation, is holding a court of the United States. Technically, we speak of an examining magistrate, and not of an examining court. The distinction is recognized in the statutes (section 1014), by which sundry judicial officers of the United States and of the states are authorized to conduct an examination, and imprison or bail the defendant 'for trial before such court of the United States as by law has cognizance of the offense.' Also section 911, which provides that 'all writs and processes issuing from the courts of the United States shall be under the seal of the court from which they issue, and shall be signed by the clerk thereof.' But a commissioner, like a justice of the peace, is not obliged to have a seal, and his warrants may be under his hand alone. Starr v. U. S., 153 U. S. 614, 14 Sup. Ct. 919."

It is obviously implied throughout in this opinion, and the ground on which it proceeds, that the United States commissioner sustains in the federal system exactly the same relation of the committing magistrate in the state systems and at the common law, and, as has been seen, the warrant issued by such magistrate might be made general, and returned before any magistrate, giving to such magistrate full jurisdiction. It is very clear, therefore, that a warrant issued by a United States commissioner, like one issued by one of these magistrates long known to the common law, might be returned before a United States commissioner other than the one issuing the same. The ground on which the special master proceeds, therefore, gives way, in view of the fact that the marshal cannot, under the statute, charge mileage from the place of issue to the place of service, but only from the place of return to the place of service. If, therefore, the subpœna became perfect process on which the marshal might charge after the arrest of the defendant, it seems that the travel to execute the subpœna between the place of return and the place of service could be claimed upon the same ground and equally with the fee for travel on the warrant of arrest. It may be true that the result in particular cases, and also generally, may be inequitable as against the government, but, if the statute in terms allows the charge, the court would be without authority to deny it on equitable grounds. In the effort to reach an equitable result, the power of interpretation must not be permitted to trench upon the province of legislation. The distinction between the legislative and judicial function must be preserved. Interpretation may make manifest that a change of law is necessary, but it must not make that change itself. It was recognized at once that the ruling which the court thought the express language of the statute required in U. S. v. Harmon was unjust to the government, and that decision was promptly met by proper legislation changing the law in that respect, and making such a result no longer possible. This case, however, is controlled by the previous law as announced in U. S. v. Harmon, provided the facts here do not substantially distinguish this case from that; the only difference being that the writs here, while against separate persons, were issued and served in the same case. I am not, by any mode of reasoning satisfactory to myself, able to see that there is any such substantial legal distinction as justifies a different judgment from that pronounced in U. S. v. Harmon upon the facts in that case, and I therefore feel constrained, in obedience to the authority of that case, to sustain the exception to the special

master's report which raises this question.    That Attorney General Devens was of the opinion that there was no distinction between the cases of process against different persons in the same and in separate causes is made clear by the parts of the opinion herein referred to.    The precise question which was being answered by the attorney general was this:

"Whether a marshal of the United States is entitled to full mileage on each writ served by him when several issued in behalf of the government, to be served on different persons, are or might be served at the same time, only one travel being necessary to make the service on all of said persons."

Keeping in view the only lawful method of computing the mileage fee, and that question is exactly similar to the one here presented.    In the progress of the opinion, the question was again stated as follows:

"The inquiry accordingly is whether this clause forbids the allowance of mileage to a marshal on each writ where two or more writs issued in behalf of the government, to be served on different persons, at the same place, are then served by him, only one journey being necessary to serve them."

Continuing the opinion, it was said:

"It is to be observed that in regard to mileage section 829 makes no distinction between process issued in behalf of the government and that issued in behalf of individuals.    Mileage is provided by that section 'for travel, in going only, to serve any process, warrant, attachment, or other writ, including writs of subpœna in civil or criminal cases,' the provision applying alike to cases in which the government is concerned and to cases of individuals. Hence the circumstance that the writs in the case presented by the inquiry under consideration were issued in behalf of the government is unimportant. The same section also provides that the mileage shall be 'computed from the place where the process is returned to the place of service, or, where more than one person is served therewith, to the place of service which is most remote, adding thereto the extra travel which is necessary to serve it on the others.'    And under the general provision of that section the marshal must be deemed to be entitled to mileage, thus computed, on each and every writ served by him, irrespective of the number served at any time or place, with the exception of one case, which is withdrawn from their operation by being made the subject of a specific provision.    That case is 'when more than two writs of any kind required to be served in behalf of the same party on the same person might be served at the same time.'    In such case it is provided by section 829 'the marshal shall be entitled to compensation for travel on only two of such writs.'    As is well remarked by the district judge of Kentucky in the opinion hereinbefore referred to, this limitation implies that the marshal is entitled, under the other provisions of the section, to compensation for travel in going to serve any number of writs, provided that they were issued in behalf of different parties, or are to be served on different persons."

And, finally, coming directly to the point under examination, it was observed:

"As has just been intimated, where several writs, issued in behalf of different parties, are received by the marshal at the same time, and are to be served on different persons residing in the same place, the journey which is undertaken to serve these writs is as necessary for any particular one of them as it is for either of the others.    If it had been the design of congress to limit the compensation of the marshal to mileage upon but one writ in a case of this kind. the provision referred to would doubtless have been accompanied by some regulation for determining on which of the writs mileage should be allowed or taxed,—whether on the one first placed in the marshal's hands or on the one first served, etc.    It is not likely that a matter of such concern to litigants would have been left to the arbitrary determination of the marshal himself.    But the case of several writs issued in behalf of the same party (whether such party be the government or an individual) against different persons stands on precisely the same footing, when viewed in connection with

the provision in the act of 1875, as the case of several writs issued in behalf of different parties; and I am unable to find in that provision anything inconsistent with the allowance of mileage on each of the writs issued and served in either of those cases when actual travel has been performed by the marshal in serving them. * * * To the question submitted for reconsideration, I accordingly return this answer: That, in my opinion, a marshal is entitled to 'full mileage on each writ served by him when several issued in behalf of the government, to be served on different persons, are or might be served at the same time, only one travel being necessary to make the service on all of each persons where such travel is actually performed.' "

Such was the ruling in the Crittenden Case. The opinion of Attorney General Devens was recognized and followed by the first comptroller in a recent ruling. Dec. 1st Comptr. 1893–94, p. 192. The comptroller stated that the question whether a marshal should be entitled to mileage from the place where he receives the writ to the place where it is served is in doubt.

Exception 3 is to so much of the special master's report as disallows the item for service and travel in transporting prisoners from one jail to another under order of the court. The facts on which this claim rests are these: Offenders tried before a United States commissioner, and bound over, failing to give bond, were by the marshal committed to the county jail nearest to the place of trial, there to remain in custody until a true bill should be found by the grand jury. The court would then order the prisoner brought into court, just as a prisoner would be ordered brought in who was in the jail of the county where the court was held. Under such order the prisoner was transferred from the jail in which he was first lodged to the county in which the circuit court was being held, for the purpose of being put on trial under the indictment. The marshal was allowed and paid his fees, under section 829 of the Revised Statutes, "for transporting criminals ten cents a mile for himself and for each prisoner and necessary guard." What the marshal now claims is the right to charge six cents a mile for the distance in going to the out county jail and two dollars for service of the order, treating the order in all respects as original process under the general provisions of section 829. This is clearly an attempt to make a double charge for the same service, and cannot be allowed, under the express language of the section of the act; and such, in effect, is the holding in U. S. v. Tanner, 147 U. S. 661, 13 Sup. Ct. 436. And see, also, Campbell v. U. S., 13 C. C. A. 128, 65 Fed. 781. Exception 3 is therefore overruled.

The fourth and last exception raises the question of the right to charge two dollars per day in each case for attending criminal examinations in separate and distinct cases on the same day before the same commissioner. The reasons why the master disallows this item of the account are fully stated in the report, page 33. Plaintiff's attorney relies, to sustain this exception, upon the case of U. S. v. McMahon, 13 C. C. A. 257, 65 Fed. 976. The judgment in that case was, however, on writ of error reversed by the supreme court, and it only remains upon the undisputed facts to make the decree conform to the law as settled by that court. U. S. v. McMahon, 164 U. S. 81, 17 Sup. Ct. 28.