BaRNEv, J.,
delivered the opinion of the court:
This is a suit brought by Hon. John F. Wilson, who was a Delegate to the Fifty-eighth Congress from the Territory of Arizona, for mileage claimed to be due him. Mr. Wilson attended the extraordinary session of the Fifty-eighth Congress which was convened by the proclamation of the President on November 9, 1903. This extraordinary session continued in session until December 1, 1903, the day appointed by the Constitution for the annual convening of Congress, and up to a few minutes before the annual constitutional session was called to order.
The Fifty-seventh Congress at its last regular session made an appropriation for the mileage of Senators, Members of the Ho.us.e of Representatives, and Delegates from *431 the Territories for the fiscal year 1904 (32 Stat., 854, 858), and this appropriation was made available and authorized to be paid to the Senators, Members, and Delegates for attendance on the extraordinary session of Congress which convened November 9, 1903 (33 Stat., 1); and the claimant received the mileage due to him out of said appropriation. No further appropriation was ever made by Congress for the payment of mileage to Members of Congress and Delegates for attendance upon the session of Congress which convened pursuant to the Constitution December 7, 1903. It appears, therefore, from the petition that none of the Members of the Fifty-eighth Congress ever received any mileage for attendance upon Congress at the extraordinary session of November 9, 1903, and the regular annual session of December 7, 1903, except the one mileage provided for and made available in the manner before stated.
The foregoing is a statement in substance of the facts set out in the petition in this case. To this petition the Government has demurred, stating two grounds of demurrer, (1) that this court has no jurisdiction of the subject-matter of the petition, (2) that the petition does not state facts sufficient to constitute a cause of action; and the issue of law raised by this demurrer is now before this court for decision.
I. We can not agree with the contention of the attorney for the Government that this court is without jurisdiction in this suit. He has quoted section 6, Article I, of the Constition, as sustaining this contention, as follows:
“ The Senators and Representatives shall receive a compensation for their services, to be ascertained by law, and paid out of the Treasury of the United States * *
This provision only places Members of Congress as to compensation upon the same footing with all other officers of the Government, i. e., their compensation is fixed by law of Congress (and not by a provision in the Constitution) and, more important still, is paid out of. the Treasury of the. United States. The reason for this provision in the Constitution is apparent, and needs no discussion here, but reference for a treatment of the subject is made to Story on the Constitution, sections 851-858.
*432 An argument is attempted to be made upon some statutes quoted that the salary and mileage of Representatives and Delegates in Congress is entirely dependent upon the certificate of the Speaker and that such certificate is conclusive upon that subject. We do not think any such conclusion can be made from the statutes called to our attention; and if it could, we do not think any such judicial power can be delegated to that officer.
By the first section of the Tucker Act this court has jurisdiction of all “ claims founded upon any law of Congress.” The claim in this case is founded upon a law of Congress enacted agreeably to the express words of the Constitution; hence our jurisdiction is beyond question.
II. Some discussion has been had as to whether there were two or three sessions of the Fifty-eighth Congress; in other words, whether the extraordinary session which convened November 9, 1903, by proclamation of the President, continued over the 7th day of December following, the date prescribed by the Constitution for the annual convening of Congress, thus constituting but one session. Without discussing the question at length here, we simply state that we are of the opinion that the extraordinary session closed when the time arrived for the convening of the session provided by the Constitution, thus making two sessions even if the meeting of the Members of that Congress from day to day had been continuous.
By thus holding we are confronted with the question, Whether the Members of the Fifty-eighth Congress are entitled to pay for mileage for each of these sessions? It appears from the petition that the claimant never returned to his home after the close of the extraordinary session, and came back again to be present at the opening of the constitutional session; in fact, had no time to do so, unless he traveled upon the wings of lightning.
As the right of the claimant under the law to receive anything for mileage at either of the sessions of the Fifty-eighth Congress, except actual traveling expenses, has been questioned by government counsel, we deem it proper at this point to give the history of legislation on this subject so far as it can be said to relate to this case.
*433 The act of July 28,. 1866 (14 Stat., 323), provided:
“ That the compensation of each Senator, Representative, and Delegate in Congress shall be five thousand dollars per annum, to be computed from the first day of the present Congress, and, in addition thereto, mileage at the rate of twenty cents per mile, to be estimated by the nearest route usually traveled in going to and returning from each' regular session.”
This statute was in force until 1873, when it was superseded by the act of March 3, 1873,(17 Stat., 486), which provided:
“And Senators, Representatives, and Delegates in Congress, including Senators, Representatives, and Delegates in the Forty-second Congress holding such office at the passage of this act and whose claim to a seat has not been adversely decided, shall receive seven thousand five hundred dollars per annum each, and this shall be in lieu of all pay and allowance, except actual individual traveling expenses from their homes to the seat of government and return, by the most direct route of usual travel, once for each session, of the house to which such Senator, Member, or Delegate belongs, to be certified to under his hand to the disbursing officer, and filed as a voucher.”
This law was repealed the very next year by the act of January 20, 1874 (18 Stat., 4), which is as follows:
“ That so much of the act of March third, eighteen hundred and seventy-three, entitled ‘An act making appropriations for legislative, executive, and judicial expenses of the Government for the year ending June thirtieth, eighteen hundred and seventy-four,’ as provides for the increase of the compensation of public officers and employee's, whether Members of Congress, Delegates, or others, except the President of the United States and the justices of the Supreme Court, be, and the same is hereby, repealed, and the salaries, compensation, and allowances of all said persons, except as aforesaid, shall be as fixed by the laws in force at the time of the passage of said act.”
It is insisted by the Government that the law of 1874 only repealed the law relating to the salary of Members of Congress, and never repealed the provision for mileage in the law of 1873. It is true that in the law of 1874 there was no repeal as to mileage in express terms, but after the repealing clause the section further provides that “ the salaries, corn- *434 pensation, and allowances of all persons, except as aforesaid, shall be as fixed by the laws in force at the time of the passage of said act.” The law in force at the time of the passage of the salary law of 1873 was the act of July 28, 1866, which was thus reenacted as to salaries, compensation, and allowances; and certainly mileage is either compensation or an allowance. Thus it will be seen that the law of 1866 as to the salary and mileage of Members of Congress was in force during the Fifty-eighth Congress. If there was any doubt about this question, the fact that Congress has so construed the law for more than thirty years would be very persuasive at least.
III. It is contended on behalf of the claimant that the mileage provided for in the law of 1886 is a part of the salary of Members of Congress, and that they are entitled to receive it each session regardless of whether they perform any travel or not; while on the other side it is insisted that the provision for mileage is a recompense for travel actually performed, and that Members of Congress are only entitled to it when travel is necessary to attend upon the sessions of Congress whether extraordinary or the sessions which convene under the Constitution on the first Monday in December.
The statute of 1866 under consideration provides:
“ That the compensation of each Senator, Nepresentative, and Delegate in Congress shall be five thousand dollars per annum to be computed from the first day of the present Congress, and in addition thereto mileage at the rate of twenty cents per mile, to be estimated by the nearest route usually traveled in going to and returning from each regular session.”
It is contended by the claimant that the mileage provided for is arbitrarily payable regardless of actual travel, because after providing for the $5,000 per annum the law says: “ and in addition thereto mileage;” that is to say, as we understand ^ the argument, the words “ in addition thereto ” couple the $5,000 provided for and the mileage so inseparably that they both together constitute the annual salary of Members of Congress.
We see no force in such a construction of those words. Mileage, in whatever terms provided for any public officer, is in addition to the per diem or annual compensation received— *435 i. e., it is compensation allowed for traveling expenses, besides, together toith or in addition to the compensation otherwise provided, and whichever of those terms is employed the signification is the same. Doubtless when a Member of Congress receives his allowance for mileage, he puts it in the same pocket or the same bank to be added to his annual salary, but that fact does not deprive it of its quality as mileage. If only actual traveling expenses were' allowed, as in the act of March 3, 1873, sufra, the same language might ivell have been employed and its signification would have been the same as in the act of July 28,1866. The separation of salary from mileage, in providing for the compensation of Members of Congress, is clearly indicated by the language used in the repealing act of January 20, 1874, sufra. It says: “ and the salaries, compensation, and allowances of all said persons, except as aforesaid, shall be as fixed by the laws in force at the time of the passage of said act ” (i. e., act of July 28, 1866). Thus we see that this provision for mileage was regarded as an “ allowance.” While the term “ allowance ” has a very indefinite legal signification, it here certainly means something entirely separate from salary, and can only refer to mileage.
In the case of Sherburne v. United States (16 C. Cls. K., 491), in which the signification of the words “ pay ” and “ allowances ” was involved as applied to officers of the army, this court said:
“ Pay is a fixed and direct amount given by law to persons in the military service in consideration of and as compensation for their personal service. Allowances, as they are now called, or emoluments, as they were formerly termed, are indirect or contingent remuneration, which may or may not be earned, and which is sometimes in the nature of compensation, and sometimes in the nature of reimbursement.” (Id., 496.)
There was no provision in the law of 1866 for the payment of any money for “ allowance ” as distinguished from “ salary ” except the provision for mileage. This fact clearly indicates no intention of Congress in the acts of March 3, 1873, and January 20, 1874, to make the mileage provided for an inseparable part of the salary or compensation of Members.
*436 It is also a fact of some significance in the discussion of this question that Congress, at least ever since 1814, in every legislative, executive, and judicial appropriation bill has appropriated'for the salary and mileage of Members of Congress separately, in the following language:
“ For compensation of Senators, Members of the House of Representatives, and Delegates from Territories * * * dollars.”
“For mileage * * * dollars.” (IS Stat., 87, 345; 34 id., 392, 938.)
“ Mileage ” is defined in the Century Dictionary as payment allowed to a public functionary for the expense of travel in the discharge of his duties, according to the number of miles passed over. Substantially the same definition is found in Bouvier’s and other law dictionaries.
Smith v. United States (26 C. Cls., 568; 158 U. S., 346) was a suit brought by a United States district attorney for the Territory of New Mexico to recover mileage, which had been disallowed him by the accounting officers of the Treasury on the ground that such mileage was a part of his compensation provided by law. At that time United States district attorneys received the larger part of their compensation in fees, with a maximum limitation in the case of district attorneys for New Mexico of $3,500; and it appeared that the plaintiff in that case had already been allowed sufficient fees for the year in question to make up that sum.
The statute in fixing the fees of United States district attorneys, among other items, provided “ For traveling from his place of abode to the place of holding any court of the United States in his district, or to the place of any examination before a judge or commissioner of a person charged with a crime, ten cents a mile for going and ten cents a mile for returning.” (Sec. 824, R. S.)
The Supreme Court affirmed this court in deciding that the mileage thus provided for was not compensation for official services, but was an allowance, by way of reimbursement for expenses incurred or presumed to have been incurred in traveling.
*437 In its opinion the Supreme Court used the following language:
“ While an allowance for travel fees or mileage is, by section 823, included in the fee bill, we think it was not intended as a compensation to a district attorney for services performed, but rather as a reimbursement for expenses incurred, or presumed to be incurred, in traveling from his residence to the place of holding court, or to the office of the judge or commissioner. The allowance of mileage to officers of the United States, particularly in the military and naval service, when traveling in the service of the Government, is fixed at an arbitrary sum, not only on account of the difficulty of auditing the petty items which constitute the bulk of traveling expenses, but for the reason that officers travel in different styles; and expenses which in one case might seem entirely reasonable might in another be deemed to be unreasonable. There are different standards of traveling as of living, and while the mileage in one case may more than cover the actual- expenses, in another it may fall short of it. It would be obviously unjust to allow one officer a certain sum for traveling from New York to Chicago and another double that sum, and yet their actual expenses may differ as widely as that. The object of the statute is to fix a certain allowance, out of which the officer may make a saving or not, as he chooses or is able. And while in some cases it may operate as a compensation, it is not so intended, and is not a fee, charge, or emolument of his office within the meaning' of section 834.” (Id., 349.) The liberal allowance of mileage in the act of July 28, 1866, doubtless operates as a compensation, as was said by the court in the above case might sometimes occur, but that fact does not take from it its characteristic as mileage.
The act of February 22, 1875 (18 Stat., 333-334), was a statute to regulate the fees and costs of district attorneys, marshals, and clerks, and among other things is provided: “And from and after the first day of January, eighteen hundred and seventy-five, no such officer or person shall become entitled to any allowance for mileage or travel not actually and necessarily performed under the provisions of existing law.”
In commenting upon this statute, in a case before him, the Attorney-General said:
“ That provision was intended to apply to cases in which no actual travel is performed in serving process, as, for in *438 stance, where the writ is sent through the mail to be served by a deputy at or near the place of service. It was well known to Congress that under the fee bill the practice of thus serving writs and charging mileage therefor, as if travel had been actually performed to serve them, prevailed. The claim of an allowance for travel for such service — the travel being in fact constructive only — was regarded as an abuse. To remedy this and to confine the allowance of mileage to cases in which there has been actual travel it is believed the provision in the act of 1875 was enacted.” (16 Opp. Atts. Gen., 165-169.)
This opinion was cited by the Supreme Court with approval. (Harmon v. United States, 147 U. S., 268-280.)
In short, under all .the authorities “ mileage ” means an allowance for actual travel about the public business, and mileage and travel are thus inseparably connected.
The language of the statute in question reinforces this interpretation, for it provides for “ mileage at the rate of 20 cents, per mile by the nearest route usually traveled in going to and returning from, each regular session.'1'’ This also seems to be the interpretation which Congress has given to the statute, for during the present session of the Sixtieth Congress a Member who, for reasons unnecessary to state, had not been in attendance at all, wrote to the Sergeant-at-Arms for his mileage (presumably for the purpose of “adding ” it to his salary), and he was promptly informed by that official that as he had not attended the session no mileage was due him. (Congressional Record, 60th Cong., 2d sess., 1178.) This Member was paid his regular salary until he was declared to have vacated his office. If mileage is a part of the regular compensation of a Member of Congress under the law in question, there was no reason why this Member should not have received his mileage as well as his $7,500 per annum. Or if, under this law, this Member was not entitled to mileage because he did not come to Washington to attend upon the session of Congress, why should a Member of Congress receive mileage for a session beginning almost simultaneously with the closing of a session for which he had been paid his mileage ?
If we look beyond the letter of the law and look at its spirit and reason, we must come to the same conclusion; for *439 the construction asked for by the claimant would make the compensation of Members of Congress unequal. The compensation of a Member of Congress of the Fifty-eighth Congress from one of the Pacific States, would be more than a thousand dollars more than the compensation of a Member from any of the States in the vicinity of Washington, with no travel having been made to justify this extra pay.
The act of July 28, 1866, provides for mileage for Members of Congress for attendance upon “ each regular session.” There is no distinction in the nomenclature of sessions of Congress in the Constitution, and we believe every session of Congress regularly called and convened is a “ regular session.” At least we so consider them for the purposes of deciding this case, and we hold that there were three sessions of the Fifty-eighth Congress, the extraordinary session beginning November 9, 1903, and closing December 7, and the two regular annual sessions following.
The Fifty-seventh Congress made an appropriation for mileage of Members of Congress for the fiscal year 1904, and this was made available by the Fifty-eighth Congress as soon as it convened in extraordinary session, as before stated. It appears from the petition that but one travel was necessary to go to and return from both this extraordinary session and the December session, and for this travel the claimant had received his mileage.
It might not be out of place here to state that the House of Eepresentatives of the Fifty-eighth Congress, while in Committee of the Whole House on the state of the Union, by a unanimous vote refused to make an appropriation for an extra mileage for these first two sessions. (Congressional Eecord, 58th Cong., 2d sess.,-1419.) This is at least persuasive that that great body was of the opinion that the law did not authorize such an appropriation. We say this realizing, of course, that if the appropriation had been made, that would have been the law regardless of what the act of July 26,1866, provided.
We think the claimant has received all the mileage to which he is entitled under existing law, and the petition is dismissed.