UNITED STATES *v.* McMAHON.

McMAHON *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 356, 357. Argued October 21, 1896. — Decided November 2, 1896.

The fees to which a marshal is entitled, under Rev. Stat. § 829, for attending criminal examinations in separate and distinct cases upon the same day and before the same commissioner, are five dollars a day; but when he attends such examinations before different commissioners on the same day he is entitled to a fee of two dollars for attendance before each commissioner.

A special deputy marshal, appointed under Rev. Stat. § 2021, to attend

before commissioners and aid and assist supervisors of elections, is entitled to an allowance of five dollars per day in full compensation for all such services.

The marshal of the Southern District of New York, who transports convicts from New York City to the state penitentiary in Erie County in the Northern District of New York is entitled to fees at the rate of ten cents per mile for the transportation, instead of the actual expense thereof.

A marshal is not entitled to a fee of two dollars for serving temporary and final warrants of commitment.

THESE were writs of error sued out by both parties. to review a judgment of the Circuit Court of Appeals for the Second Circuit, affirming, except in one particular, a judgment of the Circuit Court for the Southern District of New York for $4843.60 in favor of the petitioner McMahon, for fees and disbursements as marshal for that district, from July 7, 1885, to January 12, 1890. The opinion of the Court of Appeals is found in 26 U. S. App. 687.

The assignments of error filed by both parties are set out in the opinion of the court.

*Mr. Assistant Attorney General Dodge* for the United States. *Mr. Felix Brannigan* was on his brief.

*Mr. Richard Randolph McMahon* for McMahon.

MR. JUSTICE BROWN delivered the opinion of the court.

In these cases the government assigns as error —

1. The allowance of a charge of two dollars per day for attending criminal examinations in separate and distinct cases upon the same day; these examinations being on some days all before the same commissioner, and on others before different commissioners. The evidence does not disclose how much of this amount is applicable to each class of cases.

By Rev. Stat. § 829, the marshal is allowed " for attending the Circuit and District Courts, . . . and for bringing in and committing prisoners and witnesses during the term, five dollars a day," and " for attending examinations before a commissioner, and bringing in, guarding and returning prisoners

Opinion of the Court.

charged with crime, and witnesses, two dollars a day; and for each deputy, not exceeding two, necessarily attending, two dollars a day." If the fee were two dollars for attending examinations simply, it might well be held that he was entitled to that amount for each examination, though there were a dozen in a single day; but as the allowance is not for each examination but for each day, we think it clear that the marshal is only entitled to a single fee. It is scarcely possible to suppose that he would be allowed but five dollars for attending court, irrespective of the number of cases disposed of or of the number of prisoners brought in and committed, and yet be allowed separate fees in each case before a commissioner, which in the aggregate might be double the amount allowed for attending court. *McCafferty* v. *United States*, 26 C. Cl. 1.

But when a marshal attends examinations before two different commissioners on the same day, we think he is entitled to his fee of two dollars for attendance before each commissioner. In the case of *United States* v. *Erwin*, 147 U. S. 685, we held that a district attorney was entitled to charge a *per diem* for services before a commissioner upon the same day that he was allowed a *per diem* for attendance upon court; and the argument controlling our opinion in that case is equally applicable here. It is true that in that case the charge was for attending before the court and before a single commissioner upon the same day; but where the officer attends before two or more commissioners, who may hold their sessions at a distance from each other, we see no reason why he should not be entitled to a fee in the case of each commissioner.

2. The allowance of two dollars per day to special deputy marshals for attendance before a commissioner on November 2, 1886, "said day being an election day." The finding is that for his service upon this day each deputy marshal received a *per diem* of five dollars. It is not directly found by the Circuit Court that these special deputies were appointed pursuant to Rev. Stat. § 2021, Title XXVI, but as it is so admitted in the briefs of counsel, and as this title makes the

only provision for the appointment of special deputies, we
may assume that to be the fact. The duties of such special
deputies, who are appointed by the marshal to aid and assist
the supervisors of election, are fixed by §§ 2021, 2022 and
2023. They are in general to keep the peace, support and
protect the supervisors of the election in the discharge of
their duties, preserve order, to arrest and take into custody
any person offending against the law, when (§ 2023) "the
person so arrested shall forthwith be brought before a com-
missioner . . . for examination of the offences alleged
against him." By § 2031, "there shall be allowed and paid
to .. . . each special deputy marshal who is appointed
and performs his duty under the preceding provisions, com-
pensation at the rate of five dollars per day for each day he
is actually on duty, not exceeding ten days."

As it appears by these sections that the attendance of the
deputy before the commissioner is incidental to his service in
arresting the fraudulent voter and taking him before the com-
missioner, we think it is covered by the *per diem* provided by
§ 2031. The allowance of five dollars per day was evidently
intended to be full compensation for all services performed
by him as such deputy. The assignment is well taken.

3. Exception is also taken to the allowance of fees at the
rate of ten cents per mile for transporting convicts from New
York City to the state penitentiary in Erie County, in the
Northern District of New York, instead of the actual expense
of such transportation. By Rev. Stat. § 829, the marshal is
allowed "for transporting criminals, ten cents a mile for him-
self and for each prisoner and necessary guard," with the
following exception: "for transporting criminals convicted
of a crime in any District or Territory, where there is no
penitentiary available for the confinement of convicts of the
United States, to a prison in another District or Territory
designated by the Attorney General, the reasonable actual
expense of the transportation of the criminals, the marshal
and the guards, and the necessary subsistence and hire." It
appears that no prison in the State of New York has been
expressly designated by the Attorney General for the confine-

ment of Federal convicts, but by the state law it is the duty of the keepers of state prisons to receive and keep such convicts, when sentenced to imprisonment therein by any court of the United States sitting within the State. Literally, the service charged for in this case does not fall within the second paragraph of the above section, since it does not appear that there is no penitentiary available within the Southern District of New York, nor does it appear that the penitentiary in Erie County has been designated by the Attorney General for the confinement of Federal convicts.

There are other provisions of law, however, which it is necessary to consider in this connection. By Rev. Stat. § 5540, originally enacted in 1856, " where a judicial district has been or may hereafter be divided (New York was originally a single district, act of September 24, 1789, c. 20, 1 Stat. 73), the Circuit and District Courts of the United States shall have power to sentence any one convicted of an offence punishable by imprisonment at hard labor to the penitentiary within the State, though it be out of the judicial district in which the conviction is had." Moreover, by Rev. Stat. § 5541, originally enacted in 1865, " in every case where any person convicted of any offence against the United States is sentenced to imprisonment for a period longer than one year, the court . . . may order the same to be executed in any state jail or penitentiary within the District or State where such court is held," etc., and by Rev. Stat. § 5542 a similar provision is made where the convict is sentenced to imprisonment and confinement to hard labor.

By a subsequent act of July 12, 1876. c. 183, 19 Stat. 88, amending Rev. Stat. § 5546, convicts " whose punishment is imprisonment in a District or Territory where, at the time of conviction, . . . there may be no penitentiary or jail suitable for the confinement of convicts, or available therefor, shall be confined . . . in some suitable jail or penitentiary in a convenient State or Territory to be designated by the Attorney General," in which case the marshal is only allowed the reasonable actual expenses of transportation, etc.; " but if, in the opinion of the Attorney General, the expense of trans-

portation from any State  .  .  .  in which there is no peni-
tentiary, will exceed the cost of maintaining them in jail in
the State,  .  .  .  then it shall be lawful so to confine them
therein for the period designated in their respective sentences."
We see no reason to suppose that this act was intended to
repeal Rev. Stat. §§ 5540, 5541 and 5542, since the act is a
mere reënactment of original § 5546, enacted in 1864 (one
year *before* § 5541), except that it permits the place of confine-
ment of the convict to be changed, whenever the penitentiary
to which he is sentenced becomes unsuitable or unavailable at
any time during the term of imprisonment; and by a further
clause, permission is given the Attorney General to change the
place of imprisonment whenever it is necessary for the preser-
vation of the health of the prisoner, or the place of confine-
ment becomes insecure, or the prisoner is cruelly or improperly
treated.

Upon the other hand, it appears to us that it was the inten-
tion of Congress that these several provisions should be read
together, and that the restriction of the marshal to his expenses
of transportation was only designed to apply where the At-
torney General has found that there is no available peniten-
tiary within the district, and has designated a prison in another
district for that purpose.  It does not necessarily follow that,
because a portion of his travel was outside his district, he
is limited to his expenses, since the first paragraph of § 829,
above quoted, is a general provision allowing him mileage with
the exception provided for in the next paragraph.  As the
travel was actually made, the marshal is presumed to have
earned his mileage, and the burden is upon the government to
show that the transportation falls within the excepted clause.
While the authority of the marshal, as such, is confined to his
district, it may be lawfully extended by the United States to
other districts for special purposes, such, for instance, as the
service of a subpœna, for which it has usually been held the
marshal was entitled to mileage, though the service was made
outside his district.

Sections 5540 to 5542 were apparently designed to apply to
cases where the State contains more than one district, while

§ 5546 was probably intended, notwithstanding the use of the words "District or Territory," in the first clause, to apply to the not infrequent cases where there is no suitable penitentiary within the State, in which case the court is authorized to commit the convict to some suitable penitentiary "in a convenient State or Territory, to be designated by the Attorney General." This power has been frequently exercised by courts of the Western States by committing prisoners to penitentiaries in the Northern or Eastern States. Where the penitentiary is located in the same State, it would seem reasonable that the marshal should be entitled to his mileage, though the state prison may happen to be in another district, since it may be in fact quite as near to the place where his court is held, as it is to the place where the court is held in the district of its actual location.

Why these convicts were sent to a penitentiary outside the district in which they were tried does not appear, but we are bound to presume that the action of the court in that particular was taken for a good and sufficient reason, and was dictated by what it conceived to be the best interests of the government. As, under §§ 5541 and 5542, it was within the discretion of the court to sentence the convicts to any penitentiary within the State, the mileage was properly allowed.

4. The last item to which exception is taken by the government is to a charge of two dollars for serving temporary and final warrants of commitment. As the court had previously disallowed a charge of $503 for serving temporary warrants of commitment, the allowance of this item was probably an oversight. In *United States* v. *Tanner*, 147 U. S. 661, we held that the marshal was not entitled to charge for mileage in serving warrants of commitment, upon the ground that he was allowed ten cents mileage for his own transportation and that of his prisoner, and that the delivery of such warrants to the warden of the penitentiary was not a "service" within the meaning of § 829. We have seen no reason to change our views in that particular. The word "service" in this connection ordinarily implies something in the nature of an

act or proceeding adverse to the party served, or of a notice to him, and we think was not intended to cover the case of a warrant deposited with the warden of a penitentiary as a voucher or authority for detaining the prisoner. Moreover, it is scarcely possible that Congress could have intended to allow the marshal ten cents a mile for his own travel when accompanying a prisoner, and at the same time to allow him six cents for carrying the warrant of commitment with him; or to allow him fifty cents for a commitment of the prisoner and also two dollars for serving a warrant of commitment, when the commitment would not be valid without the warrant, and the commitment and service of the warrant are contemporaneous acts. As the *per diem* of the marshal for attendance before the court or commissioner includes "the bringing in, guarding and returning prisoners charged with crime," and as, by § 1030, "no writ is necessary to bring into court any prisoner or person in custody, or for remanding him from the court into custody; but the same shall be done on the order of the court or district attorney, for which no fee shall be charged by the clerk or marshal," and no such warrant appears to be necessary under the practice in the State of New York, the issue of such warrants, except perhaps the first one, appears to be unnecessary.

In the case of the writ sued out by McMahon the plaintiff assigns as error the action of the Court of Appeals in rejecting a charge for serving temporary warrants of commitment issued by a commissioner; but as this is covered by the point last decided, it is unnecessary to consider it.

*It results that in the case of the United States v. McMahon the judgment of the Court of Appeals must be reversed, and the case remanded for a new judgment in conformity with this opinion.*