## JACOBUS v. UNITED STATES.

### (Circuit Court, S. D. New York. May 9, 1898.)

1. UNITED STATES MARSHAL—FEES—TRANSPORTING PRISONERS.

Under Rev. St. § 829, a United States marshal for the Southern district of New York, for transporting prisoners to prisons within the state of New York, is entitled to fees at the rate of 10 cents per mile for himself or his deputies, and for each prisoner or necessary guard. See McMahon v. U. S., 17 Sup. Ct. 28, 164 U. S. 81.

2. SAME—DEPORTATION OF CHINESE.

For transporting to the frontier or seaboard Chinese persons unlawfully within the United States, marshals are not entitled to fees, under Rev. St. § 829, at the rate of either 10 cents or 6 cents per mile; the service is a special one, and, under the acts making appropriations for Chinese exclusion, only actual expenses are allowed.

3. SAME—SERVING PROCESS.

Where several distinct lots of articles, alleged to have been illegally imported, are grouped in a single libel in rem, marshals, for serving the warrant of seizure under such libel, are entitled to fees for one service only, and may not charge a separate fee for service against each separate lot. The same is true, also, in respect to the service of a monition and warrant of destruction, issued under the libel.

This was an action by John W. Jacobus against the United States, which was brought under the provisions of section 2 of the act of March 3, 1887 (24 Stat. 505), known as the "Tucker Act."

Henry L. Stimson and John C. Breckenridge, for petitioner.
D. Frank Lloyd, Asst. U. S. Atty.

SHIPMAN, Circuit Judge. The following findings of fact have been agreed to by the respective parties, and are found to be true by the court:

(1) That the petitioner herein is now, and at all the times hereinafter mentioned was, a citizen of the United States, and a resident of the city, county, and state of New York.

(2) That from January 13, 1890, to July 25, 1894, he was the duly appointed, qualified, and acting United States marshal for the Southern district of New York, and that during said time he, as such marshal, performed services and incurred expenses in behalf of the United States, and thereby earned and became entitled to receive the fees and allowances provided by law.

(3) That during the said period above named the petitioner duly rendered his official accounts, with the vouchers and items thereof, to the district court of the United States for the said district, and duly proved to the satisfaction of the said court, in the presence of the district attorney, in the manner required by Act Feb. 22, 1875, c. 95, § 1, that the services therein charged by your petitioner had been actually and necessarily performed, and that the disbursements therein charged had been fully paid in lawful money, and the said accounts were thereupon duly approved by the said court in accordance with the provisions of the said act, and orders duly entered of record to that effect.

(4) The services described in Schedules A, B, and C of the petition were actually performed by the marshal, as therein set forth.

(5) Thereafter the accounts containing the said charges, including the fees charged in Schedules A and B of the petition, were duly presented to the department of the treasury of the United States for allowance and settlement thereof, and the fees now claimed in said Schedules A and B were each and all of them disallowed by the accounting officers of said department, on the sole ground that for said services the marshal was entitled only to be reimbursed for his actual expenses, and was not entitled to receive fees or mileage for said services. In accepting the allowance of said expenses, the petitioner expressly

notified the accounting officers in each case that he did not waive his right to the fees so charged in his account.

(6) The difference between the amount of fees charged in Schedule A (at the rate of 10 cents a mile, in going only, for each prisoner, each deputy, and each necessary guard) and the amount allowed as expenses in lieu of said fees by the accounting officers, is $5,378.41. No part of this sum has been allowed or paid by the United States to the petitioner.

(7) The following are the services charged for in Schedule B of the petitioner: The Chinese persons therein mentioned were, on or about the dates therein set forth, brought before a commissioner of the United States circuit court, or a judge of said court, for the Southern district of New York, at the city of New York, upon complaint that they were not entitled to remain in the United States; and the said commissioner or judge, in accordance with the laws then in force, found and adjudged that the said Chinese persons were not lawfully entitled to remain in the United States. Thereupon the said commissioner or judge ordered that the said Chinese persons be removed from the United States. The dates of said judgments and orders for removal are as follows: As to two of the Chinese, June 14, 1892, and February 23, 1893; as to two others, and as to the remaining two, May 2, 1894. Thereupon, on or about the dates mentioned in said Schedule B, and in accordance with said judgments and orders, the petitioner transported the said six Chinese persons from the city of New York to the city of San Francisco, Cal., and there duly delivered them to the collector of customs at said port of San Francisco, for deportation to China. For this service petitioner now claims the sum of $2,095.40, this amount being the difference between fees amounting to $4,601.60, at the rate of 10 cents a mile for travel, in going only, from New York to San Francisco, for each Chinese person, each deputy, and each necessary guard, and the $2,506.20 allowed him by the accounting officers as reimbursement of his actual expenses in performing the said services. The distance from New York to San Francisco is 3,266 miles, and the mileage charged by the marshal, as above mentioned, for each of the above Chinamen (exclusive of the mileage for deputies and guards), was $326.60, amounting to $1,959.60 for all six. The actual cost of the transportation and subsistence of said six Chinamen (exclusive of the transportation and subsistence of the deputies and guards) was $689.96. The marshal also included in the amount set forth in Schedule B of the petition a charge of six cents a mile for travel, in going only, to serve a warrant of deportation for each of the above six Chinese persons, amounting in each case to $195.96, and in all to $1,175.76. The following is the form of the warrant thus served by the marshal upon the collector of customs of San Francisco, by delivering to him a copy thereof, together with the receipt of the said collector for the said Chinese persons attached to or indorsed upon the original warrant when returned by the marshal to the commissioner or judge who issued it:

"The President of the United States of America, to the Marshal of the United States for the Southern District of New York, and to his Deputies, or Either of Them: Whereas, complaint upon oath was duly made before me, a commissioner of the circuit court of the United States for the Southern district of New York, charging one Ung Seck, a Chinese person, or person of Chinese descent, with being then and there unlawfully within the United States, and the said Ung Seck having been arrested and brought before me by the marshal of the United States for said district upon a warrant issued by me upon the said complaint, and it appearing upon an examination before me, by the evidence presented, that said Ung Seck is a Chinese person, or a person of Chinese descent, and the said Ung Seck having failed to establish to my satisfaction his lawful right to remain in the United States; and whereas, the said Ung Seck having failed to make it appear to me that he is a subject or citizen of some other country: Now, therefore, you and each of you are hereby commanded, in the name of the president of the United States, to remove the said Ung Seck from the United States to China as provided for by law.

"Witness my hand and seal this 23d day of February, 1893.

"[Signed]                                    Samuel H. Lyman,

"Commissioner of the Circuit Court of the United States

"[Seal.]                      for the Southern District of New York."

Indorsed:
"Warrant of Deportation.

"I hereby depute C. H. Jacobus, A. C. Kennedy & S. Hildreth, or either of them, to execute the within warrant.
"J. W. Jacobus, U. S. Marshal, S. D. N. Y."

"Office of the Collector of Customs, Port of San Francisco.
"March 20, 1893.

"Received of Chas. H. Jacobus, U. S. deputy marshal, Southern district of New York, the following named Chinese person found unlawfully in the United States, and ordered deported from said district to China, the country whence they came: Ung Seck; Luk Lung.
"[Signed]                    T. G. Phelps, Collector of Customs."

(8) First. In the said accounts as thus approved were included charges by the marshal for taking possession, on February 11, 1891, of 65 certain lots of articles under a warrant of seizure issued to him for that purpose. Said charges thus made were at the rate of $2 for the service of said writ upon each of said 65 lots of articles, amounting to $130. Second. The said 65 lots of articles had been imported from various foreign countries into the United States on different dates and vessels, consigned and addressed to different persons, and had been detained by the collector of the port and collection district of New York in the course of importation. A list of the said 65 lots of articles, of the dates of importation and detention by the collector, and of the names of the persons to whom they were consigned, is attached to the complaint and affidavit of the collector in the proceedings hereinafter mentioned. Third. Service of said warrant of seizure was actually made in pursuance of certain proceedings taken against said 65 lots of articles under sections 2491 and 2492 of the Revised Statutes of the United States. Annexed hereto, as Exhibit D, are true copies of the writs and other papers used in the said proceedings, to wit, the complaint and affidavit of the collector, the warrant of seizure, the return of the marshal to said warrant, the information, the monition and the return of the marshal thereto, the decree of destruction, and the warrant of destruction and the return of the marshal thereto. Fourth. In the said accounts as thus approved were also included charges by the marshal for executing on December 14, 1891, against the said 65 lots of articles, the writ of monition above mentioned, and for attaching the said articles in obedience to said motion, and giving notice to all persons claiming the same to show cause why said articles should not be condemned, forfeited, and destroyed. Said services were actually rendered as set forth by the return of the marshal to said writ of monition, and said charges were at the rate of $2 for the execution of said writ against each of said 65 lots of articles, amounting to $130. Fifth. In the said accounts as thus approved were also included charges by the marshal for executing on December 31, 1891, a writ of destruction against said 65 lots of articles, and destroying the same. Said services were actually rendered as set forth in the marshal's return to said writ, and said charges were at the rate of $2 for the execution of said writ against each of said 65 lots of articles, amounting to $130. Sixth. Thereafter the said accounts containing the said charges were duly presented to the department of the treasury of the United States for allowance and settlement thereof, and the said charges were each and all of them disallowed by the accounting officers of said department on the sole ground that for all of the said services the marshal was entitled to but $2 for the service and execution of the warrant to take possession, $2 for the service and execution of the said monition, and $2 for the service and execution of said writ of destruction, amounting to $6 in all. Seventh. Of the said charges of $390, made by the marshal as aforesaid, the sum of $384 has never been settled or paid by the United States, and constitutes one of the claims for which the present action was brought.

(9) First. That in the said accounts as thus approved were also included charges made by the marshal for serving and executing on March 16, 1893, a warrant of seizure, and on June 13, 1893, a monition to attach and publish notice, and on June 27, 1893, a writ of destruction against each of 20 other lots of articles. Said 20 lots of articles had been imported from various foreign countries into the United States on different dates and vessels, consigned and addressed to different persons, and had been detained by the collector of the port

and collection district of New York at various different dates. Second. The service of said writs was actually performed as recited in said accounts, in pursuance of certain proceedings taken under and in accordance with the terms of sections 2491 and 2492 of the Revised Statutes of the United States. The said writs so executed, and the return of the marshal thereto, were similar in all respects to those executed by him on the 65 lots of articles last above mentioned, and the proceedings and papers in which said writs were issued were similar in all respects to the proceedings and papers against said 65 lots, as set forth in Exhibit D, except that such proceedings and papers related to 20 instead of 65 lots of articles. Third. The charges thus made by the marshal and approved by the said district court were for $2 for the service of each of the said three writs upon each of the said 20 lots of articles, amounting to a total of $120. Fourth. Thereafter the said accounts containing the said charges were duly presented to the department of the treasury of the United States for allowance and settlement thereof, and the said charges were each and all of them disallowed by the accounting officers of said department on the sole ground that for all the said services the marshal was entitled to but $2 for the service and execution of the warrant of seizure, $2 for the service and execution of the said monition, and $2 for the service and execution of said writ of destruction, amounting to $6 in all. Fifth. Of the said charges of $120, made by the marshal as aforesaid, the sum of $114 has never been allowed, settled, or paid by the United States, and constitutes one of the claims under which the present action was brought.

(10) First. That in the accounts as thus approved were also included charges made by the marshal for serving and executing on February 16, 1892, a warrant of seizure, and on March 10, 1893, a monition to attach and publish notice, and on May 22, 1893, a writ of destruction against each of 49 other lots of articles. Said 49 lots of articles had been imported from various foreign countries into the United States on different dates and vessels, consigned and addressed to different persons, and had been detained by the collector of the port and collection district of New York at various different dates. Second. The service of said writs was actually performed as recited in said accounts, in pursuance of certain proceedings taken under and in accordance with the terms of sections 2491 and 2492 of the Revised Statutes of the United States. The said writs so executed, and the return of the marshal thereto, were similar in all respects to those executed by him against the 65 lots of articles above mentioned, and the proceedings and papers in which said writs were issued were similar in all respects to the proceedings and papers against said other lots, copies of which are hereto annexed, marked "Exhibit D," except that such proceedings and papers related to 49 instead of 65 lots of articles. Third. The charges thus made by the marshal and approved by the said district court were for $2 for the service of each of the said three writs upon each of the said 49 lots of articles, amounting to a total of $294. Fourth. Thereafter the said accounts containing the said charges were duly presented to the department of the treasury of the United States for allowance and settlement thereof, and the said charges were each and all of them disallowed by the accounting officers of said department on the sole ground that for all of the said services the marshal was entitled to but $2 for the service and execution of the warrant of seizure, $2 for the service and execution of the said monition, and $2 for the service and execution of said writ of destruction, amounting to $6 in all. Fifth. Of the said charges of $294, made by the marshal as aforesaid, the sum of $288 has never been allowed, settled, or paid by the United States, and constitutes one of the claims under which the present action was brought.

"Exhibit D.

"Complaint and Affidavit.

"District Court of the United States for the Southern District of New York.

"To the Honorable Addison Brown, Judge of the District Court of the United States for the Southern District of New York: The complaint of James Carter, of the port and collection district of New York, in said Southern district, respectfully shows that on dates during one thousand eight hundred and ninety certain articles, being then and there articles for the prevention of conception, obscene articles, namely, sixty-five lots of articles for the prevention of conception, obscene books, cards, photographs, manf. of ivory, etc., were imported into

the United States within said district by various parties as per schedule annexed, having been brought from various a foreign port or place, by the ship or vessel as described in schedule, contrary to the statute of the United States in such case made and provided; that said articles were then and there seized by the collector of the port and collection district of New York in the course of importation, and are now detained by him within the district aforesaid, according to law. James Carter."

"Southern District of New York, City and County of New York—ss.: James Carter, being duly sworn, says that the foregoing declaration or complaint is true of his own knowledge, except as to the matters therein stated on his information and belief, and that as to these matters he believes it to be true.

"James Carter.

"Sworn to before me this 9th day of February, 1891.

"Thos. Alexander, U. S. Commissioner."

Indorsed:

"37–22.

"U. S. District Court, Southern District of New York.

"In the Matter of the Complaint of James Carter That Articles have been Imported Contrary to Sec. 2491, Revised Statutes U. S. Complaint and Affidavit to Ground Warrant.

"Hon. Edward Mitchell, U. S. Attorney.

"Filed Feby. 11, 1891."

Attached to the face of this complaint and affidavit is the following schedule:

| No. | Date. | Importer. | Goods. |
| --- | --- | --- | --- |
| 17,848. | Sept. 24/89. | John Keep. | 1 article for prevention of conception. |

Then follows a list of 65 other articles, with the numbers, dates of importation, names of importers, and description of goods.

"Warrant to Take Possession.

"The President of the United States of America to the Marshal of the United States for the Southern District of New York: It being made to appear to my satisfaction by the complaint and affidavit of James Carter, sworn to the 9th day of February, 1891, that certain obscene articles and articles for the prevention of conception, namely, sixty-five lots of articles for the prevention of conception, obscene books, cards, photographs, manufactures of ivory, etc., imported on dates during the year one thousand eight hundred and ninety, by various parties, as per schedule annexed to said complaint and affidavit and a copy thereof annexed hereto, have been imported into the United States within the district aforesaid, contrary to the statute of the United States in such case made and provided, and that the said articles have been seized in the course of importation by the collector of the port and collection district of New York, and are now detained by him, within the district aforesaid, according to law: Now, therefore, under and by virtue of the power vested in me by the fifth section of the act of congress approved March 3, 1873, entitled 'An act for the suppression of trade in, and circulation of, obscene literature and articles of immoral use,' and the acts supplemental thereto and amendatory thereof, I, Addison Brown, judge of the district court of the United States for the Southern district of New York, do hereby require you, by yourself or deputy, to seize and take possession of the said articles, and to safely keep the same in your possession until the further order of this court; and, as soon as you shall have taken possession of the same, to forthwith thereupon make due and immediate return thereof, and return this warrant, with report of proceedings thereon, to the district court of the United States for the Southern district of New York, as required by law.

"Witness my hand and the seal of said court, at the city of New York, this 11th day of February, one thousand eight hundred and ninety-one.

"Addison Brown,

"Judge of the District Court of the United States for the Southern District of New York.

"Attest: Saml. H. Lyman, Clerk.

"Edw. Mitchell, United States Attorney."

Indorsed:

"37–22.

### "U. S. District Court, Southern District of New York.

"In the Matter of Certain Articles Imported Contrary to Sec. 3, Act March 3, 1873, and Acts Supplemental Thereto and Amendatory Thereof.   Original Warrant.

"Edward Mitchell, U. S. Attorney.

"I have served the within warrant by taking possession of the articles within named, which I now hold, subject to the further order of this court.

"Dated Feb. 17, 1891.

"John W. Jacobus, U. S. Marshal.

"Filed Feby. 17–1891."

Attached to the face of the warrant of seizure is a schedule in terms the same as the one attached to the face of the complaint and affidavit.

### "Information.

### "District Court of the United States of America for the Southern District of New York—Of February Term in the Year One Thousand Eight Hundred and Ninety-One.

### "Before the Honorable Addison Brown, the District Judge.

"On the 16th day of February, in the year one thousand eight hundred and ninety-one, comes Edward Mitchell, as the attorney of the United States for the said Southern district of New York, in a cause of seizure and forfeiture of property under revenue laws of the United States, and informs the court: That, on the several days set forth in the schedule annexed in the column headed 'Date,' Joel B. Erhardt, the then collector of customs for the port and collection district of the city of New York, seized on land the property described and set forth in the said schedule in the column headed 'Goods,' which he now has within the said Southern district of New York, as forfeited to the United States for the causes propounded in the following articles; that said goods, wares, and merchandise were then and there obscene books, papers, prints, photographs, pictures, match safes, canes, clay figures, glass articles, cigar holders, playing cards, toys, manufactures of ivory and metal, calendars, check pessaries, rubber pessary, articles for the prevention of conception, as specified in said column headed 'Goods,' and were imported into the United States in the port and collection district of New York, from foreign ports and places, contrary to the statute of the United States in such case made and provided, to wit, section 2491 of the Revised Statutes of the United States.   And the said attorney of the United States, on behalf of the United States, saith that all and singular the premises are true; and that by reason thereof, and by force of the statutes in such case made and provided, the aforementioned goods, wares, and merchandise became and are forfeited to the use of the said statutes provided.   Wherefore he prays that due process issue in that behalf, as well of attachment, to bring the said property within the custody of the court, as of monition, to all parties in interest, to appear on the return of such process, and duly intervene herein, by claim and plea to the premises; and, due proceedings being had thereon, that, for the causes aforesaid, the said goods, wares, and merchandise be condemned by decree of destruction, or such other disposition thereof as the court shall direct according to law.

"[Signed]                         Edwd. Mitchell, U. S. Atty."

Indorsed:

"37–22.

### "U. S. District Court, Southern District of New York.

ᵛUnited States versus One Obscene Book and 64 Other Lots of Obscene Articles. Information of forfeiture.   In Rem.   S. 2,491, R. S. U. S.

"Edward Mitchell, United States Attorney, Attorney for Plaintiff.

"Due service of a copy of the within is hereby admitted.

"New York, ——, 189–.

"————, Attorney for Defendant.

"Filed Feby 16, 1891."

"Sir: You will please take notice that a ——, of which the within is a copy, was this day duly entered in the within-entitled action, in the office of the clerk of the ——.

"Dated, N. Y., ——, 189-.

"Yours, etc.,

"——, U. S. Attorney, Attorney for Plaintiff.

"To ——, Attorney for ——."

"Monition.

"Southern District of New York—ss.:

"The President of the United States of America to the Marshal of the Southern District of New York, Greeting: Whereas, an information hath been filed in the district court of the United States for the Southern district of New York on the 16th day of February, in the year of our Lord one thousand eight hundred and ninety-one, by Edward Mitchell, Esquire, U. S. district attorney, on behalf of the United States of America, against the property mentioned and described in the following schedule: [Here is annexed a schedule in terms the same as the one annexed to the complaint and affidavit, supra],—for the reasons and causes in the said information mentioned, and praying the usual process and monition of the said court in that behalf to be made, and that all persons interested in the said property may be cited, in general and special, to answer the premises, and all proceedings being had that the said property may, for the causes in the said information mentioned, be condemned and destroyed as forfeited to the United States: You are therefore hereby commanded, as you have been heretofore commanded, to attach the said property, and to detain the same in your custody, until the further order of the court respecting the same, and to give due notice to all persons claiming the same, or knowing or having anything to say why the same should not be condemned and destroyed pursuant to the prayer of the said information, that they be and appear before the said court, to be held in and for the Southern district court of New York, on the 29th day of December, 1891, at eleven o'clock in the forenoon of the same day, if the same shall be a day of jurisdiction, otherwise on the next day of jurisdiction thereafter, then and there to interpose a claim for the same, and to make their allegations in that behalf; and what you shall have done on the premises, do you then and there make return thereof, together with this writ.

"Witness: The Honorable Addison Brown, Judge of the said court, at the city of New York, in the Southern district of New York, this 14th day of December, in the year of our Lord one thousand eight hundred and ninety-one, and of our independence the one hundred and sixteenth.

"Saml. H. Lyman, Clerk.

"Edward Mitchell, U. S. District Attorney."

Indorsed:

"Vol. 37, Page 22.

"Southern District of New York, United States District Court.

"The United States vs. One Obscene Book and 64 Other Lots of Obscene Articles. Alias Monition Ret'ble Dec. 29, 1891.

"Edward Mitchell, U. S. Attorney.

"Filed the 29th day of Dec., 1891."

Attached to this monition are proof of publication of notice as required by law and order of judge directing alias monition:

"In obedience to the within monition, I attached the articles therein described, on the 14th day of December, 1891, and in obedience to the annexed order have given, as appears by the annexed proof of publication, due notice to all persons claiming the same that this court will on the 29th day of December inst. (if that day shall be a day of jurisdiction; if not, on the next day of jurisdiction thereafter) proceed to the trial and condemnation thereof, should no claim be interposed for the same. John W. Jacobus, U. S. Marshal.

"Dated Dec. 29, 1891."

"Decree of Destruction.

"At a Stated Term of the District Court of the United States of America for the Southern District of New York, held at the United States Court Rooms,

in the City of New York, in the said District, on the —— Day of December, in the Year of Our Lord One Thousand Eight Hundred and Ninety-One.

"Present: The Honorable Addison Brown, District Judge.

"The United States of America vs. One Obscene Book and Sixty-Four Other Lots of Obscene Articles. Final Decree.

"The monition issued in this cause having been heretofore returned, and the usual proclamation having been made, and the default of all persons being duly entered, it is thereupon, on motion of Edward Mitchell, Esq., attorney for the United States, ordered, sentenced, and decreed, by the court, now here, and his honor, the district judge, by virtue of the power and authority in him vested, doth hereby order, sentence, and decree, that the goods, wares, and merchandise above mentioned be, and the same accordingly are, condemned as forfeited to the United States.    And upon like motion it is further ordered, sentenced, and decreed that the clerk of this court issue a writ of destruction to the marshal of the district, returnable on the first Tuesday of January next.

"Addison Brown."

Indorsed:

"Vol. 37, Page 22.

"District Court of the United States for the Southern District of New York.

"The United States of America vs. One Obscene Book and Sixty-Four Other Lots of Obscene Articles.
"Edward Mitchell, U. S. District Attorney.
"Final Decree of Condemnation and Destruction.    Filed Dec. 30, 1891."

"Warrant of Destruction.

"Southern District of New York—ss.:
"The President of the United States of America to the Marshal of the Southern District of New York, Greeting: Whereas, an information was filed in the district court of the United States for the Southern district of New York on the 11 day of February, in the year of our Lord one thousand eight hundred and ninety-one, by Edward Mitchell, United States district attorney, on behalf of the United States of America, against one obscene book and 64 other lots of obscene articles, and praying that the same may be condemned as forfeited to the said United States; and whereas, the said goods, wares, and merchandise have been attached by the process issued out of the said district court in pursuance of the said information, and are now in custody by virtue thereof, and such proceedings have been thereupon had that by the definite sentence and decree of the said court in this cause, made and pronounced on the 30th day of December, one thousand eight hundred and ninety-one, the said goods, wares, and merchandise were condemned as aforesaid, and ordered to be destroyed by you, the said marshal, according to law, and that you have this writ, at a district court of the United States to be held for the Southern district of New York, on the 1st Tuesday of January, one thousand eight hundred and ninety-two: Therefore, you and the said marshal are hereby commanded to cause the said goods, wares, and merchandise so condemned and ordered to be destroyed to be destroyed in the manner and form upon the notice, and at the time and place by law required; and that you have, pursuant to the aforesaid order or decree, then and there this writ.

"Witness: The Honorable Addison Brown, judge of the said court, at the city of New York, in the Southern district of New York, this 31st day of December, in the year of our Lord one thousand eight hundred and ninety-one, and of our independence the one hundred and sixteenth.
"Sam'l H. Lyman, Clerk.
"Edward Mitchell, U. S. District Attorney."

"In obedience to the above precept, I have destroyed the goods, wares, and merchandise above described.
"Dated this Feb. 10, 1892, day of ——.
"John W. Jacobus, U. S. Marshal."

Indorsed:
"Vol. 37, No. 2.

"United States District Court for the Southern District of New York.

"The United States vs. One Obscene Book and Sixty-Four Other Lots of Obscene Articles. Writ of Destruction. Returnable for the first Tuesday of January, 1892.

"Edward Mitchell, U. S. District Attorney.

"Filed the 10 day of Feby., 1892."

The conclusions of law upon the foregoing facts are as follows:

1. The petitioner is entitled to the amount of fees charged in Schedule A for the transportation of prisoners under a final sentence, from New York City to various prisons and penitentiaries in the state of New York, at the rate of 10 cents per mile for himself or his deputy, and for each prisoner and necessary guard, as provided in section 829 of the Revised Statutes. The right to this fee having been determined by the supreme court in McMahon v. U. S., 164 U. S. 81, 17 Sup. Ct. 28, the government withdrew any objection to this part of the petitioner's account, amounting to the sum of $5,278.41.

2. The petitioner is not entitled to fees for the services named in Schedule B (being for the conveyance of six Chinese persons conveyed from New York to San Francisco in pursuance of orders of deportation from a commissioner of the circuit court of the United States for the Southern district of New York) in excess of the actual expenses of such conveyance, and which actual expenses he has received. The petitioner places his right of recovery upon one of the following provisions of section 829:

"For transporting criminals, ten cents a mile for himself and for each prisoner and necessary guard; except in the case provided for in the next paragraph.

"For transporting criminals convicted of a crime in any district or territory where there is no penitentiary available for the confinement of convicts of the United States, to a prison in another district or territory designated by the attorney general, the reasonable actual expense of transportation of the criminals, the marshal, and the guards and the necessary subsistence and hire.

"For travel, in going only, to serve any process, warrant, attachment, or other writ, including writs of subpoena in civil or criminal cases, six cents a mile, to be computed from the place where the process is returned to the place of service."

It is not claimed by the petitioner that the proceeding against a Chinaman who is found to be unlawfully in this country is a criminal proceeding, or that "the order of deportation is a punishment for crime." The contrary has been expressly stated in Fong Yue Ting v. U. S., 149 U. S. 698, 730, 13 Sup. Ct. 1016. Neither is the order regarded as a process or warrant in a civil case to bring a person or thing within the jurisdiction of the court, for the service of which travel at the rate of six cents a mile is allowed. The proceeding is one sui generis and peculiar, and the marshal's services in the deportation are not described in the fee bill, but it is contended that they are analogous to services for which fees in section 829 are allowed, and that for such analogous services similar fees should be allowed, because otherwise the marshal is compelled to discharge

onerous duties for which he receives no adequate compensation. If, after the Chinese exclusion acts were passed, the statutes had been silent in regard to the payment of expenses for the deportation of Chinamen who are found to be unlawfully in the United States, the argument would have force; for, when the aid and the authority of the courts of the United States are called into requisition for the due enforcement of this class of statutes, the orders of the courts must almost necessarily be executed by the marshals. Inasmuch as these acts placed upon the treasury department the general oversight in regard to their execution and the duty of payment for the services which were performed, the annual appropriation acts made provision for the payment by that department of such expenses, and specified the character of the expenses. Thus, an appropriation was made for the fiscal year ending June 30, 1892 (26 Stat. 948), for the expenses of returning to China all Chinese persons found to be unlawfully within the United States, and in the appropriation acts for the two succeeding fiscal years (27 Stat. 349, 572) appropriations were made for the expenses of returning to China all Chinese persons found to be unlawfully in the United States, including the cost of imprisonment and actual expense of conveyance of Chinese persons to the frontier or seaboard for deportation. These appropriations include the years for which services are charged by the petitioner. It was the apparent intention of congress to limit payments for these services to expenses, and it pointed out in the later acts that it meant to include the actual expenses of conveyance to the seaboard for transportation. Compensation was not to be made for these services upon the system of the fee bill, which, as a rule, gave a remuneration above expenses, but was to be limited to the actual expenses which were incurred. The service was a special one, and the amount of compensation was specially provided. Whether this denial of compensation for the time spent and for the responsibility incurred in the services is or is not a hardship upon the officer is not a question for present consideration. It is the system which congress adopted, and it had a precedent in section 829, which gave to the marshal only the reasonable actual expenses of the conveyance of criminals to a prison in another district or territory, under the circumstances specified in the statute.

3. For the service of a libel in rem, brought under the provisions of sections 2491 and 2492 for the seizure and condemnation of several articles imported by different persons and at different times, the petitioner is entitled to a single fee of two dollars for the service of the warrant of seizure, and not to a fee of two dollars for services upon each article named in the libel. The same rule applies to his fee of two dollars for the service of a monition and to his fee for the service of a writ of destruction.

The district attorney, under the supposed or actual authority of section 978, grouped 65, 20, and 49 several articles which were illegally imported, and which were in the possession of the collector of customs, in three libels, respectively. The accounting officers allowed fees upon three libels; whereas, the petitioner claims that he is entitled to fees upon 134 libels, because they were against sepa-

rate articles imported by different persons. It is not necessary for me to determine whether the procedure of the district attorney was authorized by the statute. The validity of the proceedings was not apparently called in question by any claimant or by the court. There were in fact but three libels, and the same number of warrants of seizure or monitions, and of warrants of destruction, and the services upon the articles named in any one libel were made simultaneously. The petitioner is not authorized to call each article the subject of a separate libel.

4. The petitioner is entitled to a judgment in his favor for the sum of $5,378.41, and the statutory costs allowed by the fifteenth section of the statute of March 3, 1887.